## A92A2218. McCLINTON v. SULLIVAN.
(430 SE2d 794)

BEASLEY, Presiding Judge.

This is a direct appeal from the order of the probate court in an estate administration, to the extent that it denied in part a motion for summary judgment. See OCGA §§ 15-9-120 to 15-9-123.

Appellant, Emory McClinton, the temporary administrator of the estate of his deceased daughter, Lita Sullivan, filed a petition seeking permanent letters of administration. The mother and two siblings of Lita Sullivan concurred in his appointment. Appellee, James Sullivan, the decedent's widower, filed a caveat objecting to McClinton's appointment and seeking his own appointment as administrator. McClinton moved for summary judgment.

The probate court granted that portion of McClinton's motion seeking to prevent Sullivan's appointment, denied that portion of the motion seeking McClinton's appointment, and appointed the county administrator. It did so by applying OCGA § 53-6-24, which sets forth the rules to be observed in granting letters of administration. Factually, it is undisputed that Lita Sullivan died intestate, survived by her estranged husband, against whom she had filed a complaint for divorce, her father, mother, two siblings, and no children. Statutory construction is the key to resolution of this case.

1. The trial court ruled that Sullivan was not entitled to serve as administrator because OCGA § 53-6-24 (a) (1) provides: "The surviving spouse . . . shall be first entitled, unless an action for divorce or separate maintenance was pending between the deceased and the surviving spouse at the time of the death." The exception was added in 1986. Ga. L. 1986, p. 200, § 1. This was done "to reflect the reality of broken domestic tranquility." *Simpson v. King*, 259 Ga. 420, 422, fn. 2 (383 SE2d 120) (1989). Sullivan did not appeal from the partial grant of summary judgment against him. Moreover, as indicated in the *Simpson* footnote, he would not be entitled to serve.

2. McClinton asserts that he, his wife, and two children are the "next of kin" within the meaning of subsection (a) (2), and that his wife and children properly selected him as administrator under subsection (a) (3). We cannot agree with either contention. Subsections (a) (2) and (3) of the statute provide as follows: "(2) The next of kin, at the time of death, according to the law declaring relationship and distribution, shall be next entitled; (3) If there are several of the next of kin equally near in degree, the person selected in writing by a majority in interest of those interested as distributees of the estate, who are capable of expressing a choice, shall be appointed."

(a) In all statutory interpretation, it is our obligation to seek the legislature's intention, OCGA § 1-3-1 (a), and to attempt to effectuate the legislature's purpose. *Hollowell v. Jove*, 247 Ga. 678, 681 (279

SE2d 430) (1981). It is clear from the overall scheme of OCGA § 53-6-24, and particularly from the language in subsection (a) (9), that the legislature favored the administration of estates by those having the right to inherit them. Subsection (a) (9) provides: "As a general rule, to cover all cases not specially provided for, the person having the right to the estate shall be appointed administrator; . . ." This was more completely explained in *Simpson*, supra at 422: "The general rule is: ' "Both by common law and by statute, the person entitled to the estate of a decedent is entitled to the administration." The reason usually given for this rule is that the person having title to the estate is most interested and will take best care of it. The administrator holds the estate for the purpose of paying debts and distribution. . . . The rule that the administration should go to the person having the greatest interest in the estate is generally recognized.' *Roe v. Pitts*, 82 Ga. App. 770, 773-774 (62 SE2d 387) (1950). See also Redfern, Wills and Administration in Georgia, § 261 (S. Love, 5th ed. 1988)."

This court has ruled that "construing [the predecessor subsections of (a) (2) and (a) (3)] together, it is obvious that the next of kin referred to [in (a) (2)] are 'next of kin . . . interested as distributees of the estate.' [Cit.]" *Smith v. Goodwin*, 84 Ga. App. 319, 322-323 (2) (a) (66 SE2d 169) (1951). Those portions of the predecessor subsections referred to are identical to the current ones, so the construction is still valid. This construction is explained by referring to subsection (a) (3), which applies when there is more than one next of kin and no qualified surviving spouse: "[A] majority in interest of those interested as distributees of the estate, who are capable of expressing a choice" are to select the administrator. It is reinforced by acknowledging that subsection (a) (2)'s reference is not to "next of kin" in a vacuum, but rather to "next of kin . . . according to the law declaring relationship and distribution."

Although Sullivan is disqualified from serving as administrator under subsection (1) by reason of the divorce action pending at the time of his wife's death, he nonetheless remains the sole heir and distributee of the estate under the rules of inheritance. OCGA § 53-4-2 (1). See generally *Knowles v. Knowles*, 125 Ga. App. 642, 648 (5) (188 SE2d 800) (1972). McClinton cites no applicable law to the contrary and we have found none, nor does the evidence show otherwise.[1] The

---

[1] Although the record contains copies of the alleged prenuptial and postnuptial agreements entered into by Lita and James Sullivan under the terms of which James Sullivan renounced his right under the laws of intestacy to inherit from his wife's estate, the documents were never authenticated and never properly offered as evidence for the purpose of summary judgment. OCGA § 9-11-56 (c). Emory McClinton, not a party or subscribing witness to either of them, swore they were entered into. He was not a competent witness to authenticate them. OCGA § 24-7-4. The postnuptial document is not even dated or signed. Their validity and effect on the appointment of an administrator is therefore not drawn in

McClintons, not being interested as distributees of the estate, cannot be the "next of kin" referred to in subsections (a) (2) and (3), and they are not entitled to serve or choose. The 1986 amendment to subsection (a) (1) has created this anomaly, disqualifying all survivors whenever the married decedent is childless and divorce or separate maintenance is pending. Of course, if there are lineal descendants, the estranged surviving spouse would not be the sole heir, OCGA § 53-4-2 (1) and (2), and one of the children would be qualified to serve.

(b) Subsection (a) (6) provides that "[t]he persons entitled to serve or select among themselves . . . may select a disinterested person as administrator and, if otherwise qualified, he shall be appointed." Since none of the survivors was entitled to serve or select, this subsection did not apply.

Subsection (a) (4) provides: "If no such preference [as provided in subsection (a) (3)] is expressed, the judge of the probate court may exercise his discretion in selecting the one best qualified for the office." This does not apply either, as no survivor was qualified to express preference and none of them could be selected by the court as "best qualified."

At the hearing on the motion, Sullivan expressed his desire that a neutral third party such as the county administrator be appointed. Although the court took this into consideration, it is clear that the probate court's appointment of the county administrator was based on its own discretion. This was authorized because the statutory scheme did not provide an express rule to cover the situation here, which was created by the 1986 amendment to subsection (a) (1). Yet it did, in the one instance where others who ordinarily would choose the administrator did not do so, authorize the court to appoint the administrator. Subsection (a) (4). Also, it provided that, in the instance where persons qualified to serve or select chose not to serve, "a disinterested person" be selected by them. Subsection (a) (6). Taking these two elements, i.e., court appointment and the necessity of "a disinterested person," together, we perceive the intent of the legislature to be that the court appoint a disinterested, qualified person in the circumstances presented here. Otherwise, there could be no grant of letters of administration to anyone, despite the fact that it was desired by all survivors.

The rules require that the one appointed "be of sound mind" and "laboring under no disability." They seek to have one appointed who has an interest in the estate either as distributor or creditor or as a disinterested person selected by the interested person or persons. The court appointed a qualified, disinterested person.

question. OCGA § 9-11-56 (e).

We find no error.

*Judgment affirmed. McMurray, P. J., Andrews and Johnson, JJ., concur. Justice George H. Carley concurs. Pope, C. J., Birdsong, P. J., Cooper and Blackburn, JJ., dissent.*

BIRDSONG, Presiding Judge, dissenting.

I respectfully dissent.

1. OCGA § 53-6-24, as amended, provides that in the granting of letters of administration, the following rules "shall be observed . . . (1) The surviving spouse . . . shall be first entitled, unless an action for divorce or separate maintenance was pending between the deceased and the surviving spouse at the time of the death; (2) The next of kin, at the time of the death, according to the law declaring relationship and distribution, shall be next entitled. . . ."

The majority has concluded that Sullivan, as surviving spouse is, "according to the law declaring relationship and distribution" (id.), Mrs. Sullivan's "next of kin" entitled to inherit even though he is disqualified from serving as administrator, and therefore that Mrs. Sullivan's family, the McClintons, cannot be her next of kin entitled to inherit and " 'interested as distributees of the estate.' " See *Smith v. Goodwin*, 84 Ga. App. 319, 322-323 (66 SE2d 169).

In the majority's view, the legislature, in amending OCGA § 53-6-24 to disqualify a surviving spouse as administrator when there is a divorce action pending, created a "glitch" in the statutory scheme, because under the law as to order of inheritance a surviving spouse is still entitled to inherit as the next of kin; and as " 'the person entitled to the estate of [the] decedent [he] is entitled to the administration.' " *Roe v. Pitts*, 82 Ga. App. 770, 773-774 (62 SE2d 387).

I think any conflict in the statute is illusory. While looking for the legislature's intention in amending or enacting any law, we are not authorized to presume the legislature was unaware of co-existing laws. In amending OCGA § 53-6-24 to disqualify a divorcing spouse as administrator and to mandate that the "next entitled" shall be the "next of kin, at the time of death, according to the law declaring relationship and distributions," the legislature was indisputably aware that until a divorce is final an intestate deceased's surviving spouse is still a distributee of the estate and is entitled to inherit as the "next of kin."

It is obvious, therefore, that by disqualifying the divorcing spouse from serving as administrator and then stating that "the next of kin . . . shall be next entitled," the legislature was referring to the deceased's "next of kin" *after the surviving spouse.*

Any other construction renders meaningless § 53-6-24 (a) (2). It works an unnatural and unreasonable result and leads to " 'absurd or wholly impracticable consequences.' " *Hollowell v. Jove*, 247 Ga. 678,

681 (279 SE2d 430). If the majority's reasoning were correct, subparagraph (a) (2) would *never* take effect: the divorcing spouse, though not entitled to be administrator under (a) (1), would still be the deceased's "next of kin according to the law declaring relationship and distribution" and thus would be entitled to be administrator under subparagraph (a) (2), which is of course impossible because subparagraph (a) (1) disqualified him; and so the circle goes.

We cannot conclude such an absurd and impracticable "Catch 22" consequence was intended. Without doubt, the legislature intended that the "next of kin" which it referred to as entitled to be administrator in § 53-6-24 (a) (2) is the "next of kin according to the law declaring relationship and distribution" *after the surviving spouse has been disqualified.*

*Smith v. Goodwin,* supra at 323, is cited by the majority for the idea that the "next of kin" referred to in subparagraph (a) (2) are the " 'next of kin . . . interested as distributees of the estate,' " which the McClintons can never be so long as Sullivan is the surviving spouse. That case was written long before the legislature disqualified the next of kin who is a surviving spouse when there is a pending divorce, and so it does not address this question. Moreover, the persons seeking to be administrators of Mr. Tutt's estate in that case were disqualified because they were not the next of kin of the deceased. They were the *next of kin of the next of kin* of the deceased; they were siblings of Mrs. Tutt, who died shortly after Mr. Tutt died, and they were opposed by the siblings of the deceased Mr. Tutt. They were "merely heirs of [Mr. Tutt's] wife and as such [were] not heirs of the estate under consideration." Id. at 323.

The entirety of § 53-6-24 is a list of priority as to the appointment of administrator and is not an attempt to change the laws of distribution, nor does the proper interpretation of it advocated herein change the laws of distribution. There is no conflict in it. When one entity is disqualified or not present, the next candidate steps forward. In this case, Sullivan being disqualified as administrator by § 53-6-24 (a) (1), the *next* "next of kin according to the law of relationship and distribution" are the McClintons.

Although appellee Sullivan indicates that McClinton is not suited to be administrator, the probate court may determine the validity of such argument only after it has applied the proper law entitling McClinton to the post according to the statute. Whether there is anything in the estate to "administer" is beside the point. If as Sullivan contends there is nothing in the estate, the less significant may be any alleged derelictions of McClinton while he served as temporary administrator.

2. The majority indicates in a footnote that Mr. and Mrs. Sullivan signed prenuptial and postnuptial agreements in which Sullivan

renounced any interest in Mrs. Sullivan's estate, and that these documents are in the record but are not properly "authenticated" and "never properly offered as evidence for the purpose of summary judgment." However, OCGA § 9-11-56 (c) does not pose such requirements. Although Mr. McClinton proffered them, it does not appear their existence was disputed by Sullivan; that they were introduced by McClinton, rather than by the person who signed them, does not mean they were not properly authenticated or offered. They are in the record and it does not appear Mr. Sullivan has disavowed their existence or asserts the signatures on them are not his or his former wife's. They are proper evidence of record which must be considered by the trial court when they are raised in issue. If this judgment against McClinton were reversed and the case were remanded for further proceedings, our law is clear that any issue touching on these prenuptial and postnuptial agreements may be properly raised, including their proper authentication or competence as evidence.

Sullivan argues that it is somehow "inconsistent" for the McClintons to contend these documents are valid so as to prove Sullivan has no claim, when their daughter had contended they were invalid in her divorce proceedings. I perceive this to be some sort of "equity" argument but I am not led astray. Assuming the validity of the agreements is a proper issue to be determined by the probate court in this proceeding, nothing prohibits McClinton from contending they are valid so as to prevent Sullivan from claiming that he is a distributee of the estate and is "next of kin" under § 53-6-24 (a) (2).

That his daughter once claimed their invalidity so as to enable her to share in the marital estate does not, in this administratorship dispute, force McClinton to concede the same, *especially* if this would enable Sullivan to claim that, although he is disqualified to serve as administrator, he is still the next of kin, thereby to prevent the deceased's father from administratorship. The real irony here lies in Sullivan's attempt to claim as invalid, so as to prevent Mrs. Sullivan's next of kin from his statutory entitlement of administrator of her estate, what he claimed in the divorce proceedings were valid so as to prevent her from sharing in the marital proceeds.

3. Even assuming the majority's interpretation of § 53-6-24 (a) (2) were correct, the case should be remanded for proper consideration of the validity of the prenuptial and postnuptial agreements insofar as Sullivan renounced in them any interest in Mrs. Sullivan's estate, which would make McClinton her "next of kin" even under the majority's view of § 53-6-24 (a) (2). There is no equity which would allow Sullivan to contend they are invalid so as to prevent McClinton's administratorship, when Sullivan asserted their validity to prevent Mrs. Sullivan from sharing in the marital estate.

Accordingly, I respectfully dissent on three grounds. I am author-

ized to state that Chief Judge Pope, Judge Cooper and Judge Blackburn join in this dissent.

DECIDED MARCH 19, 1993 —
RECONSIDERATION DENIED APRIL 2, 1993 

*Louis Levenson & Associates, Louis Levenson*, for appellant.
*Vincent, Chorey, Taylor & Feil, John L. Taylor, Jr., Mildred A. Hankins*, for appellee.