A93A1126. KEITH et al. v. JOHNSON.
(440 SE2d 230)

BEASLEY, Presiding Judge.

The brothers of Clarence Keith appeal from the trial court's order granting appellee's summary judgment motion and denying their own summary judgment motion in a case involving Clarence's estate.

Clarence and Ruth Keith, husband and wife, died in an apparent murder/suicide. Clarence left no will, Ruth did, and they had no children. Much of their property was held jointly.

Appellants, the next of kin of Clarence, selected Clarence's niece, Sale, to be appointed administratrix of his estate. Appellee Johnson, executrix of Ruth's estate, filed a caveat to Sale's appointment claiming Johnson should be appointed administratrix of Clarence's estate instead. Her theory was that Ruth's estate was the sole heir to Clarence's estate since Clarence killed Ruth before he committed suicide and, pursuant to OCGA § 53-4-6, Clarence is treated as having predeceased Ruth.

Johnson filed a second caveat seeking appointment of a resident of Bacon County as administrator of Clarence's estate. The probate court appointed Sale and Harper as co-administrators of Clarence's estate. Sale appealed to the superior court.

Johnson then filed a petition for declaratory judgment against appellants, Clarence's brothers, seeking a determination that Ruth's estate was the sole heir of Clarence. Upon motions of Sale and the Keith brothers, and there being no objection by Johnson, the superior court consolidated Sale's appeal with the petition for declaratory judgment.

The Keiths as defendants in the declaratory judgment action sought summary judgment on the ground that Ruth was not an heir to Clarence's estate. They took the following alternative position. If Ruth killed Clarence, she was precluded from inheriting by virtue of OCGA § 53-4-6 (a). If, on the other hand, Ruth was killed by Clarence, she was precluded from inheriting by virtue of her earlier death; OCGA § 53-4-6 (a) did not apply to *her* estate.

Johnson, executrix of Ruth's estate, also moved for summary judgment on the ground that OCGA § 53-4-6 (a) establishes Ruth as Clarence's sole heir because it treats him as having predeceased her, due to his having murdered her. She also filed, along with the motion, the transcript of the coroner's inquest concerning their deaths. Later, before the court's order was filed, she supplemented the record with

certified copies of their death certificates showing both Clarence and Ruth as having expired from gunshot wounds.[1]

After a hearing, the court concluded that there was no genuine issue of fact with respect to who killed whom and stated that Clarence killed Ruth and then himself. Based on this fact, the court applied OCGA § 53-4-6 and held that Ruth was an heir of Clarence's. The court reasoned that OCGA § 53-4-6 operates to treat the person killing as though he had predeceased the person killed such that "the person killed is an heir of the person so killing." Consequently, it granted Johnson's motion for summary judgment and denied that of the Keith brothers, who appealed both rulings.

1. As to the grant of Johnson's motion, appellants contend that there was no evidence in the record that Clarence killed Ruth and then himself, and that the court misconstrued OCGA § 53-4-6.

(a) There is no counter evidence to the sworn testimony in the coroner's inquest. It shows that Ruth's death was by homicide committed by Clarence and that his death was by suicide. Although the verdict of the coroner's jury has no probative value as evidence, *Security Life Ins. Co. v. Blitch,* 155 Ga. App. 167, 168 (2) (270 SE2d 349) (1980), the transcript is probative evidence on motion for summary judgment. *Abalene Pest Control Svc. v. Orkin Exterminating Co.,* 196 Ga. App. 463, 464 (3) (395 SE2d 867) (1990); *Bodrey v. Cape,* 120 Ga. App. 859, 860 (1) (172 SE2d 643) (1969). The court did not err in concluding that there was no genuine issue of fact regarding the order or the perpetrator of the couple's deaths. OCGA § 9-11-56 (a) and (e).

(b) Appellants contend the court erred in interpreting OCGA § 53-4-6 as creating in the murdered spouse a right of inheritance to the estate of the killing spouse; in other words, the court erred in determining that the killing spouse predeceased the murdered spouse for the purposes of determining who would inherit the killing spouse's estate.

The statute provides: "The right of inheritance shall be denied any person who with malice aforethought kills any other person or who conspires with another to kill or who procures another to kill any person. This denial of inheritance shall include any property which the person so killing would otherwise have inherited, whether real, personal, or mixed, or any part thereof, belonging to the deceased person at the time of death, or any property which the person so killing would take by deed, will, or otherwise at the death of the decedent. All right, interest, and estate in and to the property shall go to

---

[1] Despite what is stated thereon, the death certificates are not prima facie evidence of who inflicted the gunshot wounds. *Hodges v. Effingham County Hosp. Auth.,* 182 Ga. App. 173, 176 (4) (355 SE2d 104) (1987).

such other heirs as may be entitled thereto by the laws of descent and distribution or by will, deed, or other conveyance duly executed by the decedent in his lifetime. For the purpose of determining the descent and distribution through the person so killing he shall be treated as though he had predeceased the person killed." OCGA § 53-4-6 (a).

OCGA § 1-3-1 (a) requires that "[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." Under this statute, "it is our obligation to seek the legislature's intention, . . . and to attempt to effectuate the legislature's purpose." (Citation omitted.) *McClinton v. Sullivan*, 208 Ga. App. 411 (2a) (430 SE2d 794) (1993). "[T]he legislative intent must be determined from a consideration of [the statute] as a whole . . . [t]he construction of language and words used in one part of the statute must be in the light of the legislative intent as found in the statute as a whole." *Bd. of Trustees &c. v. Christy*, 246 Ga. 553, 554 (272 SE2d 288) (1980).

The evil addressed by OCGA § 53-4-6 was first pointed out in *Hagan v. Cone*, 21 Ga. App. 416 (43 SE 646) (1917), where it was stated that "[t]he question in this case is whether or not a husband who kills his wife can inherit her property."

Relying on current OCGA § 53-4-2 (upon the death of a wife, the husband is the sole heir); Ga. Const., Art. I, Sec. I, Par. XX ("[n]o conviction shall work corruption of blood or forfeiture of estate"), and OCGA § 44-5-210 (giving the state a lien on the property of a convicted offender for the costs of the prosecution), this court held that while some states had said that one who kills another cannot inherit from the deceased, "where there is a statute which fixes the rule of descent, as in our State, the authorities are practically united in holding that the fact that the heir killed the person from whom he is to inherit will not bar the operation of the statute." *Hagan*, supra at 417.[2]

This rule was adopted by the Supreme Court in *Crumley v. Hall*, 202 Ga. 588 (43 SE2d 646) (1947), where the husband murdered his wife and fled and had not been heard from in eight years. There were no children. The wife's mother, brother and sister sued the administrator of her estate, contending that the husband could not inherit from the wife, having killed her.

The court held that "[o]ur law is clear and plain that, where a wife dies without issue, the husband is the sole heir. It is not limited

---

[2] See generally Annotation, "Homicide As Precluding Taking Under Will Or By Intestacy," 25 ALR4th 787 et seq.

or restricted by any condition or circumstance. The power to provide rules of descent and distribution is in the General Assembly, and where they have provided a rule which is clear and unconditional, a court is not justified in reading into the law a condition or exception not reasonably deducible from the provisions of the statute. The law being clear and explicit, the evil, if any, can be corrected only by the General Assembly, and not by judicial action." Id. at 591.

In 1952, in apparent response to these cases, the General Assembly passed OCGA § 53-4-6. The Act was described in its title as one "to prohibit any person who shall with malice aforethought, kill another for the purpose of inheriting the property of the deceased . . . , from inheriting or in any way taking the property of the deceased. . . ." Ga. L. 1952, p. 289. In 1959, the language requiring the purpose of the murder be to inherit was deleted. Ga. L. 1959, p. 299 et seq. Again, the bill was described as one to provide that "the right of inheritance . . . shall be denied to any person who would otherwise be the heir at law . . . and who has with malice aforethought killed such person. . . ."

The purpose of OCGA § 53-4-6 is clear. It is to deprive the murderer and, by virtue of the last sentence, his heirs, of any property or interest in property held by the victim. This is in keeping with the legislative intent as articulated in *Moore v. Moore*, 231 Ga. 232, 235 (2) (201 SE2d 133) (1973): "The obvious intent of the General Assembly was to prohibit a person who maliciously kills from taking property of the deceased." This court had, a few months earlier, perceived the same thing: "The . . . code section provides in substance that where a person kills another he shall not inherit from the person he killed." *Willis v. Frazier*, 128 Ga. App. 748 (197 SE2d 830) (1973). That does not mean that the victim becomes the heir of the murderer; the sole purpose of the statute is to disinherit the murderer, and the murderer's heirs, from any property interest of the victim so that neither benefits property-wise from the criminal act.[3]

As in *Crumley*, supra at 591, the court "is not justified in reading into the law" the meaning ascribed by Johnson, because it is "not reasonably deducible from the provisions of the statute." The court erred in granting Johnson's motion for summary judgment.

2. For the reasons set out above, the court erred in denying the

---

[3] The husband's brothers would have no claim *through* Clarence, because by the fiction of his dying first, he inherited nothing from his wife. His "right of inheritance" was extinguished at the time of his death, which for the purpose of descent and distribution occurred when she was still living. Thus, as provided in the statute, whatever portion of her estate would have been inherited by the husband who killed her devolved instead to her "other heirs." As said in *McGhee v. Banks*, 115 Ga. App. 155, 156 (154 SE2d 37) (1967), "[b]y the term 'other heirs' [in the statute] the legislature meant other heirs of the deceased [the wife], whether the deceased [the wife] died intestate or testate."

motion for summary judgment made by the Keith brothers as defendants in Johnson's declaratory judgment action. Although they attempt to expand the issues before the court to include the question of who by law is to administer Clarence's estate, that question was not properly before the trial court by way of the motion and was not ruled on. Sale, the administrator who challenged the probate court's appointment of a co-administrator, did not move for summary judgment. Thus, we do not rule on this issue either.

*Judgment reversed. Cooper, J., concurs. Smith, J., concurs in the judgment only.*

DECIDED DECEMBER 20, 1993 —
RECONSIDERATIONS DENIED JANUARY 18, 1994 — 

*Walters, Davis, Meeks & Pujadas, Thomas E. Pujadas, Charles E. Bagley, Jr.,* for appellants.
*Solomon & Edgar, M. Theodore Solomon II,* for appellee.
*Evelyn H. Johnson,* pro se.