A96A0283. FIRST UNION NATIONAL BANK OF GEORGIA et al.
v. COLLINS.
(471 SE2d 892)

POPE, Presiding Judge.

First Union and seven other banks[1] brought this declaratory judgment action against Marcus Collins, as commissioner of the Department of Revenue, to determine the legality of certain service charges the banks levied in 1992 and 1993 against "dormant" instruments on which the banks were directly liable. The parties stipulate these instruments are "official" bank checks, including cashiers' and certified checks, dividend and interest checks, escrow checks, money orders, and drafts. The checks at issue became "dormant" when the payees did not present them for payment within two years from the date they were issued. Ga. Comp. R. & Regs. 80-1-8-.01 (1) (c). After a designated number of years, the funds represented by these unpresented checks escheated to the State pursuant to the Disposition of Unclaimed Property Act, OCGA § 44-12-190 et seq. (hereinafter "UPA"). See OCGA §§ 44-12-195; 44-12-196. The Revenue Department administers the UPA and claims the banks improperly withheld from the $5.1 million in abandoned funds some $540,000 in service charges. Those service charges represented, at most, $60 per instrument, charged at $5 per month for a maximum of 12 months after the instrument became dormant.

The parties' arguments center around banking statutes and regulations and provisions of the UPA through which we must sift. In summary, the banks contend they assessed these service charges pursuant to OCGA § 7-1-358, which allows banks to impose reasonable service charges on dormant accounts.[2] They rely on a regulation

---

[1] Wachovia Bank of Georgia, N.A., Trust Company Bank, Trust Company of Georgia, N.A., Trust Company Bank of Northwest Georgia, N.A., Trust Company Bank of Augusta, N.A., Trust Company Bank of Columbus, N.A., and Trust Company Bank of Middle Georgia, N.A.

[2] That statute reads in full: "In accordance with and subject to the limitation of such regulations as the department [of banking & finance] may prescribe, a bank may, from time

the Department of Banking & Finance issued in 1984, pursuant to this statute, that defines "dormant accounts" to include "[c]ertified and [o]fficial checks" which have not been presented for payment within two years of their date of issue. Ga. Comp. R. & Regs. 80-1-8-.01 (1).[3] Subsection (2) of that same regulation allows banks to impose a service charge up to $5 per month for the first 12 months in which an account is dormant.[4] Because the relevant portion of the UPA requires banks to remit abandoned funds "less any lawful charges," OCGA § 44-12-193, the banks allege the Revenue Department is not entitled to receive those amounts.

The Department argues, and the trial court concluded, that the banking statute and regulation at issue allow service charges only for dormant *deposit* accounts. The trial court also read OCGA §§ 7-1-372[5] and 11-3-104[6] to mean that banks could impose no service charges against the funds which the checks represented.

We reject the trial court's holding that OCGA § 7-1-358 and Reg. 80-1-8-.01 allow assessment of service charges only against dormant *deposit* accounts. The statute does not define "dormant account" but does allow banks to assess service charges against dormant accounts "[i]n accordance with and subject to the limitations" of banking regulations. And the regulation defines unpresented certified and official checks more than two years old to be "dormant accounts." Reg. 80-1-

---

to time, charge a dormant account a reasonable service charge."

[3] The relevant part of that regulation reads: "(1) Dormant accounts are hereby defined as follows: . . . (c) Certified and Official checks shall be deemed to be dormant when they have not been presented for payment within two (2) years of their date of issue, or if the issuing financial institution has not had correspondence with the registered owner of the check for a period of two (2) years immediately preceding the determination of dormancy."

[4] That subsection reads in full: "(2) Where the signature card or other evidence of the financial institution's contractual obligation relative to a deposit account does not make provision for maintenance or service charge on a dormant account as heretofore described, such a charge may be assessed in an amount not to exceed $5.00 per month. Service charges or maintenance charges assessed pursuant to contractual authority governing the account shall not exceed the greater of $5.00 per month or the per month service charge which the financial institution otherwise assesses against active accounts. No service charge or maintenance charge may be assessed for the dormancy period beyond the first twelve months. Dormant account service charge or maintenance charge may be charged against the account at any time prior to escheat of the account balance under the provisions of the Disposition of Unclaimed Properties Act so long as the total service charge or maintenance charge does not exceed the amount which could have been assessed during the first twelve months of dormancy pursuant to the governing contract between the parties or this regulation."

[5] At the time these service charges were made, that statute read: "A commercial bank shall pay all checks drawn on it at par and shall make no charge for the payment of such checks; however, it may deduct a reasonable collection charge covering its actual expenses from the remittance for any check forwarded to it for collection and remittance as a special collection item."

[6] That statute requires drafts and checks to "[c]ontain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by this article. . . ." OCGA § 11-3-104 (1) (b).

8-.01 (1) (c).

In construing the statutes and regulations in issue, our goal is to determine the intent of the legislature. *Dept. of Transp. v. Brown*, 218 Ga. App. 178, 180 (2) (460 SE2d 812) (1995). The rules of statutory construction, which are also applicable to regulations, show the trial court's construction does not comport with the legislature's goal. *Schwartz v. Black*, 200 Ga. App. 735, 736 (409 SE2d 681) (1991).

Although subsection two of the regulation does discuss service charges on "deposit accounts," that reference does not dominate the regulation; it must be construed in light of the entire regulation. *Keith v. Johnson*, 211 Ga. App. 678, 680 (1) (440 SE2d 230) (1994). Furthermore, statutes and regulations relating to the same subject matter must be construed together and harmonized to ascertain their legislative or administrative intent. *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, 186 Ga. App. 723, 726 (2) (368 SE2d 326) (1988). In this case, another banking regulation requires banks to keep records of "deposits" and segregate those records into categories including "official checks." Ga. Comp. R. & Regs. 80-1-3-.01 (1) (e). A related banking statute, OCGA § 7-1-4 (17), defines a "depositor" as anyone who "shall deposit money or items for the payment of money in any financial institution," including "[o]wners of certified or cashiers' checks." Thus, the reference in this regulation to service charges on "deposit accounts" does not plainly exclude service charges on official checks. Construing that phrase in light of its use in other statutes and regulations, segregated funds represented by official checks could be considered a "deposit account." The regulation itself defines a dormant official check as a dormant account. This reading of the regulation reasonably equates dormant deposit accounts with dormant official checks for purposes of service charges. As the parties agree, the banks incur costs in keeping records on and reporting to the Department on both types of dormant accounts.

The history of the UPA further supports the conclusion that the legislature did not intend to prevent banks from deducting service charges on dormant direct-liability instruments. The 1990 version of the UPA represented the legislature's enactment of the Uniform Unclaimed Property Act promulgated in 1981 by the National Conference of Commissioners on Uniform State Laws. See 8B Uniform Laws Annotated 567 (West 1993) (hereinafter "ULA"). Section 4 of the Uniform Act, applicable to money orders and travelers' checks, was enacted as OCGA § 44-12-195. Section 5 of the Uniform Act, applicable to certified checks and drafts, was enacted as OCGA § 44-12-196. Sections 4 and 5 of the Uniform Act contained provisions prohibiting banks and other holders from deducting "any charge imposed by reason of the failure to present the instrument for payment unless there is a valid and enforceable written contract

between the holder of the instrument pursuant to which the holder may impose a charge, and the holder regularly imposes such charges and does not regularly reverse or otherwise cancel them." 8B ULA at 605. Our legislature deleted those provisions when it made the Uniform Act state law, and in so doing showed its intent that those provisions not be the law of this state.

Finally, in 1995 the legislature amended OCGA §§ 44-12-196 and 7-1-372 to specifically allow banks to deduct up to 12 months of service charges on dormant official checks. Ga. L. 1995, p. 1368.[7] "If it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning, and will govern the construction of the first statute." (Citations and punctuation omitted.) *Forrester v. Interstate Hosiery Mills*, 194 Ga. 863, 866 (23 SE2d 78) (1942); see *Bd. of Trustees, Policemen's Pension Fund &c. v. Christy*, 246 Ga. 553, 555 (1) (272 SE2d 288) (1980). The legislature's act followed quickly on the heels of a 1994 Attorney General's Opinion stating that §§ 44-12-196 and 7-1-372 did not allow the service charges at issue. 1994 Op. Atty. Gen. No. 94-18. "The General Assembly apparently [did not approve] of this interpretation of legislative intent for it [has acted] to amend these [sections]." *Clarkson Power Flow v. Thompson*, 244 Ga. 300 (260 SE2d 9) (1979); see *Thompson v. Eastern Air Lines*, 200 Ga. 216 (3) (39 SE2d 225) (1946). At the same time it amended these provisions, it made no change to OCGA § 11-3-104, showing the inapplicability of that Code section to the question at hand.

Based on the language of the statutes and regulations involved, and on the intent of the legislature as evidenced by its actions, the service charges imposed on the dormant instruments in issue were "lawful charges" under OCGA § 44-12-193. The banks properly withheld these charges from the Department of Revenue, and the trial court erred in holding otherwise.

*Judgment reversed. Andrews and Blackburn, JJ., concur. Smith, J., disqualified.*

ON MOTION FOR RECONSIDERATION.

The Department of Revenue argues that Ga. Comp. R. & Reg. 80-1-8-.01 (2) allows assessment of service charges only where a contractual agreement exists between the owner of the dormant account and the bank. We take this opportunity to note that certified checks, cashiers' checks, and money orders *are* contracts between the issuing

---

[7] The new statutes, however, do not explicitly condone service charges on dormant money orders. Cf. OCGA §§ 44-12-195; 44-12-196 (1995).

bank and their owners because they represent the banks' unconditional obligations to pay. See *Dolanson Co. v. C & S Nat. Bank*, 242 Ga. 681, 683 (1) (b) (251 SE2d 274) (1978); *Fulton Nat. Bank v. Delco Corp.*, 128 Ga. App. 16, 18 (1) (195 SE2d 455) (1973). Thus, a charge of $5 per month on each instrument was proper because the "other evidence of the financial institution's contractual obligation relative to a deposit account [did] not make provision for a maintenance or service charge on a dormant account . . . ."

*Motion for reconsideration denied.*

DECIDED APRIL 11, 1996 —
RECONSIDERATION DENIED MAY 16, 1996 —

*Chilivis, Cochran, Larkins & Bever, Nickolas P. Chilivis, John K. Larkins, Jr., Thomas D. Bever*, for appellants.

*Michael J. Bowers, Attorney General, Ray O. Lerer, Senior Assistant Attorney General, W. Wright Banks, Jr., Assistant Attorney General*, for appellee.