## A96A1950. OSBORNE BONDING & SURETY COMPANY v. STATE OF GEORGIA.

(480 SE2d 900)

RUFFIN, Judge.

Osborne Bonding & Surety Company ("Osborne") appeals from the denial of its Motion for Refund of Surety Fees. In its sole enumeration of error, Osborne argues that the trial court misapplied OCGA § 17-6-72 (d) (1). We agree with Osborne and reverse.

On March 16, 1994, an individual signing his name as Lawson Cherry ("Cherry") entered into an appearance bond in Clayton County, Georgia with Osborne as surety. The bond was conditioned on Cherry's appearance in the Clayton County Superior Court to answer criminal charges. When Cherry failed to appear, the trial court forfeited the bond and issued a bench warrant for "Cherry Lawson a/k/a Lawson Cherry." On September 12, 1995, the trial court entered final judgment against Cherry and Osborne for the bond amount plus costs. Osborne paid the required sum to the Clayton County Sheriff on January 31, 1996.

Osborne subsequently learned that Cherry had been arrested in Fulton County on March 1, 1996, and booked under the alias "Cherry Lawson." After confirming Cherry's incarceration, Osborne informed the Clayton County Sheriff of his location. Osborne also placed a "hold" or detainer on Cherry in Fulton County. As stipulated by the parties, Cherry was "on a hold from Osborne Bonding and Surety Company[,] not from the [Clayton County] bench' warrant or any other proceedings out of [the Clayton County Superior] Court."

On March 11, 1996, Osborne wrote the Clayton County District Attorney's Office and demanded reimbursement of the forfeited funds pursuant to OCGA § 17-6-72. In addition, Osborne filed its Motion for Refund of Surety Fees. On April 4, 1996, the trial court denied Osborne's motion, finding that Osborne failed to show it met the statutory requirements for remission of the bond under OCGA § 17-6-72 (d) (1). On the same day, the trial judge ordered that the Fulton County Sheriff remand Cherry into the custody of the Clayton County Sheriff so that Cherry could appear for arraignment and trial on the Clayton County charges.

The parties agree that this case is governed by OCGA § 17-6-72 (d) (1) (supp. 1995), which provides that upon application within 120 days of paying the judgment of forfeiture, the "court shall direct remission of 95 percent of the bond amount remitted to the surety if the surety locates the principal [Cherry] causing the return of the principal to the jurisdiction where the bond was made, apprehends, surrenders, or produces the principal, if the apprehension or surrender of the principal was substantially procured or caused by the surety, or if the location of the principal by the surety caused the

adjudication of the principal in the jurisdiction in which the bond was made. . . ." Construing this statute, the trial court determined that Osborne played no part in apprehending Cherry, who was already incarcerated in Fulton County when located, and thus was not entitled to a refund.

Cherry's Fulton County arrest, however, did not preclude Osborne from taking advantage of OCGA § 17-6-72 (d) (1). The record shows that Cherry remained incarcerated in Fulton County after his arrest because Osborne located him there under an alias and placed a "hold" on him, not because of the bench warrant or other court proceedings in Clayton County. In addition, after confirming that Cherry was incarcerated in Fulton County, Osborne informed the Clayton County Sheriff of Cherry's location. The record reveals no evidence that Clayton County otherwise knew of Cherry's Fulton County incarceration. The Clayton County Superior Court then ordered that the sheriff bring Cherry to Clayton County for arraignment and trial on the Clayton County charges. This evidence shows that Osborne's action caused Cherry's return to Clayton County and allowed his adjudication to proceed. Accordingly, Osborne has met the requirements of OCGA § 17-6-72 (d) (1).

Our conclusion is buttressed by the 1996 amendment to OCGA § 17-6-72 (d) (1), which added the following italicized language: the "court shall direct remission of 95 percent of the bond amount remitted to the surety if the surety locates the principal *in the custody of the sheriff in the jurisdiction where the bond was made or in another jurisdiction* causing the return of the principal to the jurisdiction where the bond was made. . . ." (Emphasis supplied.) OCGA § 17-6-72 (d) (1) (supp. 1996). As we recently noted, " '[i]f it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning, and will govern the construction of the first statute.' [Cits.]" *First Union &c. v. Collins*, 221 Ga. App. 442, 445 (471 SE2d 892) (1996). We find that by adding the italicized language, the legislature clarified the circumstances under which a surety may seek repayment of funds. In short, the legislature confirmed that a surety may seek reimbursement if, as in this case, it locates a principal in the custody of another jurisdiction, thus causing the principal's return to the bonding jurisdiction.

*Judgment reversed. Johnson, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 3, 1997.

*Stephen E. Boswell, Steven C. Teske*, for appellant.

*Robert E. Keller, District Attorney, David B. Hornsby, Assistant District Attorney*, for appellee.