Charles F. **SHIPES,** Plaintiff,

v.

**BIC CORPORATION,** Defendant.

Civ. A. No. 93–174–2–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

March 11, 1994.

Bruce Randall Blackwood, John D. Steel, Atlanta, GA, for plaintiff.

Lowell Steven Fine, Kevin S. Green, Atlanta, GA, for defendant.

### ORDER

OWENS, Chief Judge.

Defendant BIC Corporation ("BIC") has moved the court for a protective order pursuant to Federal Rules of Civil Procedure 26(c) to prevent the discovery of certain material. After reviewing the documents *in camera* and carefully considering the caselaw and arguments of counsel, the court issues the following order.

### BACKGROUND

Plaintiff instituted this products liability action after allegedly being burned by a defective BIC MOD–II disposable lighter. Plaintiff seeks punitive damages for BIC's conscious indifference to the lighter's defects. The court ordered production of all documents responsive to plaintiff's discovery requests for a period of fifteen years preceding plaintiff's accident and concerning all models of BIC lighters. The court also directed BIC to produce *in camera* any documents which it claimed were privileged or otherwise non-discoverable. BIC seeks a protective order preventing discovery of certain portions of seven categories of documents and information: lawsuit files, claims files, correspondence between BIC and the Consumer Products Safety Commission ("CPSC"), depositions of BIC's expert witnesses in other cases, the in-house legal department computer data base, settlement documents, and medical records of other claimants.

### DISCUSSION

■ In general, a party may obtain discovery of all matters, not privileged, which are reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). BIC has moved for a protective order contending that certain material sought by Mr. Shipes is protected from discovery by either the attorney client privilege or the work product doctrine. Federal Rule of Evidence 501 governs the assertion of privileges and states that where state law applies to the substantive issues in the case, then privileges shall also be determined by state law. *Phillips v. Dallas Carriers Corp.*, 133 F.R.D. 475, 477 (M.D.N.C.1990). Georgia law applies to the substantive issues in this diversity tort action. *Erie R.R. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Hence, questions concerning the attorney client privilege will be decided in accordance with Georgia law.

### A. ATTORNEY CLIENT PRIVILEGE

■ Under Georgia law, a client's communications to his attorney are privileged. O.C.G.A. § 24–9–24 (1982). The attorney client privilege applies only to confidential communications between an attorney and client which relate to obtaining legal advice. The privilege attaches to communications from the attorney to the client as well as the reverse. *Moore v. Tri–City Hospital Authority*, 118 F.R.D. 646, 648 (N.D.Ga.1988). Furthermore, the privilege attaches where the client is a corporation, and where the attorney is in-house counsel. *See Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2017 at 135–36 (1970).

■ The attorney client privilege is absolute, prohibiting discovery of the privileged materials regardless of need. Because the privilege is total, defining its scope is critical. The privilege does not apply to documents obtained by the attorney from a third party, or even documents which a party filters through its attorney. 8 Wright & Miller, *Federal Practice and Procedure* § 2017 at 137.

### B. WORK PRODUCT DOCTRINE

■ The protection of the work product doctrine attaches to documents and other items produced by a party or its representative in anticipation of litigation. Fed.

R.Civ.P. 26(b)(3).[1] The test to determine whether a document constitutes work product is whether it was prepared by the party or his representative because of the prospect of litigation. *See* 8 Wright & Miller, *Federal Practice and Procedure* § 2024 at 198. A party's representative includes its attorney, insurer, employee, or other agent, so long as they were working on behalf of the party and preparing the document with the prospect of litigation in mind. *Lott v. Seaboard S.R., Inc.*, 109 F.R.D. 554, 557 (S.D.Ga.1985). Documents which were produced in anticipation of litigating one case remain protected in a separate case, at least where the cases are closely related. *Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439, 445 (D.C.N.Y. 1990); *In re Grand Jury Proceedings*, 73 F.R.D. 647 (M.D.Fla.1977).

 Commentators have referred to the work product doctrine as more of a qualified immunity than a privilege.[2] 8 Wright & Miller, *Federal Practice and Procedure* § 2025 at 212. *See also Lott*, 109 F.R.D. at 557. The protection is similar to qualified immunity because the party seeking discovery can obtain discovery of certain work product upon a showing of substantial need for the materials and necessity. *See* Fed. R.Civ.P. 26(b)(3). Plaintiff must show that he cannot obtain the substantial equivalent of the work product through other efforts, such as conducting his own investigations, and that he has a substantial need for the materials in prosecuting his case. *Id.* The rule, like its common law background,[3] meticulously protects against revealing an attorney's mental impressions, conclusions, opinions, and legal theories. *Id.* It is questionable whether any showing justifies disclosure of

an attorney's mental impressions. *See Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S.Ct. 677, 66 L.Ed.2d 584, 599 (1981); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 737 (4th Cir.1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); *FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 596 (M.D.Fla.1990), *citing Bd. of Trustees of Leland Stanford Jr. Univ. v. Coulter Corp.*, 118 F.R.D. 532, 534 (S.D.Fla.1987).

Having analyzed the scope of the attorney client privilege and the work product doctrine, the court will now assess whether the *in camera* documents are protected from discovery.

## 1. LAWSUIT FILES

 For the most part, the materials in the lawsuit files which BIC categorized as non-discoverable are protected by the attorney client privilege or the work product doctrine. The attorney client privilege protects correspondence between BIC claims examiners and counsel and letters between in-house and outside counsel. Correspondence between BIC employees and BIC's insurance carrier about pending claims certainly constitutes work product, as do handwritten notes taken by BIC in-house counsel. Certain documents, however, which BIC claims are privileged must be disclosed, specifically, plaintiff's medical records, certain statements by plaintiffs, and correspondence between BIC agents and third parties.

 The medical records contained within the lawsuit files are not subject to either the work product privilege or the doc-

---

**1.** Rule 26(b)(3) provides in pertinent part:

Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In order-

ing discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation....

**2.** Because the work product doctrine is not considered a substantive privilege, Fed.R.Evid. 501 does not require that state law be applied. *Fine*, 133 F.R.D. at 444.

**3.** The seminal case on the work product doctrine is *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

tor patient privilege and should be produced for plaintiff's review. Any doctor patient privilege which may have attached to the medical records was waived when the plaintiff/patient filed suit for personal injury and produced the medical records to prove their claim. O.C.G.A. § 24–9–40(a)(1993). Once the privilege is unconditionally waived, it can not be resurrected. Furthermore, the medical records do not constitute work product because the material was obtained by counsel for the plaintiff and delivered to BIC's legal department. BIC agents did not prepare the medical records in anticipation of litigation. *See* 8 Wright & Miller, *Federal Practice and Procedure* § 2024 at 198 (for test to determine whether document constitutes work product).

■ In addition to the medical records, BIC must produce correspondence between BIC counsel and persons who are not representatives of BIC, such as plaintiff's counsel and the court, to the extent that these letters do not reveal settlement figures. The letters do not gain immunity from discovery simply because a copy was sent to BIC. (*See e.g.* letters in *Bonnie Willard v. BIC* lawsuit file in box 11.) Letters between BIC counsel and persons not affiliated with BIC are protected from discovery if they contain settlement terms.

■ Other documents which do not constitute work product are statements by plaintiffs in past cases which were made to persons not representing BIC. (*See e.g.* plaintiffs' statements to correctional officer in *Williams and Ellison v. BIC* open law suit file in box 12.) Statements of witnesses or plaintiffs become work product only if taken by an agent of BIC.

With regard to the documents which are protected as work product, Shipes has the burden to show need for the material and necessity. *In re Thompson*, 624 F.2d 17 (5th Cir.1980) (in absence of showing of necessity, discovery will be denied); *Lott*, 109 F.R.D. at 557. Shipes has failed to show that he can not obtain the substantial equivalent of this

material. Moreover, the court finds that plaintiff's counsel should be able to obtain the desired information by conducting interviews of the claimants. Hence, BIC is not required to reveal any work product documents.

*2. CLAIMS FILES*

The claim files are divided between those that are open and those closed. All the claim files have been segregated into privileged and non-privileged sections, the non-privileged material having been disclosed already to plaintiff. The court's review revealed that most of the claim file documents classified by BIC as protected are work product documents for which plaintiff has failed to show either need or necessity. One exception concerns the medical records of the claimants.

■ Like those found in BIC lawsuit files, the medical records in the claim files are subject to neither the work product privilege nor the doctor patient privilege and should be produced for plaintiff's review. The documents are not work product because BIC agents did not prepare the medical records in anticipation of litigation. Moreover, the claimant waived the doctor patient privilege by authorizing the production of records to BIC.

❋ In addition, BIC should be careful to disclose any correspondence between BIC agents and claimants or claimant's counsel, excluding settlement figures.

*3. CONSUMER PRODUCTS SAFETY COMMISSION DOCUMENTS*

■ BIC seeks to prevent discovery of certain correspondence between BIC and the Consumer Product Safety Commission ("CPSC") under the self-critical analysis privilege. A common law privilege has developed, in some courts, for documents containing self-critical analysis.[4] The privilege is defined by the law of the forum state. Fed.R.Evid. 501; *Somer v. Johnson*, 704 F.2d 1473, 1478 (11th Cir.1983). The Geor-

---

**4.** The privilege originated in *Bredice v. Doctors Hosp., Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973) (minutes of hospital staff meetings regarding improvement of patient

care were protected from discovery by malpractice plaintiff because of important public interest in having hospitals critically evaluate the quality of care provided to patients).

gia Supreme Court has addressed the statutory privilege for self-critical analysis generated in Medical Peer Review Committees provided for under O.C.G.A. § 31–7–143 (1991). *Hollowell v. Jove,* 247 Ga. 678, 279 S.E.2d 430 (1981) (holding that material generated in the course of medical review committee proceedings concerning a physician's competence are protected from discovery in civil lawsuits). Aside from the statutory privilege, a federal court sitting in Georgia has considered the common law privilege for self-critical analysis. *Banks v. Lockheed–Georgia Co.,* 53 F.R.D. 283 (N.D.Ga.1971) (holding that material generated by Lockheed–Georgia in an attempt to comply with Title VII and Executive Order 11246 by creating affirmative action programs was not subject to discovery in a civil case). In sum, Georgia courts have not decided whether a common law privilege exists for self-critical analysis. Nevertheless, the reasoning behind the common law privilege mirrors that behind Georgia's statutory Medical Peer Review privilege. The public interest is furthered when organizations or corporations analyze their safety records.

Courts have generally required the party asserting the privilege to satisfy four criteria: "first, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of information sought; finally, the information must be of the type whose (creation) would be curtailed if discovery were allowed." Note, *The Privilege of Self–Critical Analysis,* 96 Harv.L.Rev. 1083, 1086 (1983), *quoted in Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423, 426 (9th Cir. 1992). Additionally, the document must have been created with the expectation that it would be kept confidential and must have remained so. James F. Flanagan, *Rejecting a General Privilege of Self–Critical Analysis,* 51 Geo.Wash.L.Rev. 551, 574–76 (1983), *cited in Dowling,* 971 F.2d at 426. *Compare*

*Roberts v. Carrier Corp.,* 107 F.R.D. 678, 684 (N.D.Ind.1985) (setting forth different four-part test for self-critical analysis).[5]

BIC argues that certain documents submitted to the CPSC should be afforded the self-critical analysis privilege. The documents in question were submitted pursuant to 15 U.S.C. § 2065(b) which requires manufacturers of consumer products to maintain records and provide information to the CPSC as requested. The consuming public is benefitted by the continued full and frank disclosure of product complaint and safety information to the CPSC. Further disclosure of self-evaluative reports would be stifled if manufacturers feared that their frank disclosures might be used against them in a civil action.

■■■■■ In light of the public policy served by protecting BIC's self-evaluation disclosures to the CPSC and the analogous protection afforded under Georgia's Medical Peer Review Statute, the court concludes that the Georgia courts would endorse the self-critical analysis privilege and apply the privilege to confidential self-evaluation documents created by a manufacturer for submission to the CPSC. As the Georgia Supreme Court, in *Hollowell,* required, documents must have been specifically created for submission to the review agency in order to be privileged. Information, documents, or records otherwise available from original sources are not immune from discovery merely because they were sent to the reviewing agency. *Hollowell,* 247 Ga. at 682, 279 S.E.2d 430. Moreover, the material is not privileged unless it is subjective, evaluative material.

■■■■ The letters and reports prepared by BIC appear to have been prepared exclusively for the CPSC with the intention that they remain confidential. However, most of the correspondence and reports do not contain

---

**5.** Other courts have used a modified four-part test when applying the privilege: (1) the materials must have been prepared for mandatory government reports; (2) any privilege extends only to subjective, evaluative materials; (3) the privilege does not extend to objective data in the same reports; (4) discovery has been denied only where the policy favoring exclusion has clearly outweighed plaintiff's need. *See Roberts,* 107 F.R.D. at 684; *Resnick v. American Dental Ass'n,* 95 F.R.D. 372, 374 (N.D.Ill.1982). Regardless of which test is applied in this case, the same conclusion is reached.

evaluations of BIC products, much less evaluations which are critical of BIC. A compilation of the various claims against BIC is not a subjective evaluation. Only those documents which critically analyze BIC products, testing, or procedures are protected.

The court has reviewed the CPSC documents which BIC submitted and found that only a handful of documents contained self-critical analysis.[6] In court's review has been quite exhaustive; however, BIC may need to redact portions of letters or memos not mentioned above. In that case, only subjective evaluations which are critical of a BIC product, test, or procedure can be withheld from disclosure.

### 4. DEPOSITIONS OF FORMER EXPERTS FOR BIC CORPORATION

Without addressing whether plaintiff has requested the depositions of BIC experts, the court will consider whether the opinions of BIC's in-house and outside experts are protected from discovery. Discovery of experts is provided for in Rule 26(b)(4).[7] As BIC has not yet designated an expert witness for trial, the discovery sought by Shipes is governed by Rule 26(b)(4)(B).[8]

*In–House Experts*

■■■ The rule views experts who are general employees of a party in sharp con-

trast to an expert who is "specially employed" by a party "in anticipation of litigation or in preparation for trial." Opinions of experts who are not employed in anticipation of litigation are not immune from discovery. *See* Advisory Committee Notes to 1970 Amendment to Rule 26(b)(4). The rule does not deny protection to the opinions of all in-house experts. *In re Shell Oil Refinery v. Shell Oil Company,* 134 F.R.D. 148, 149–50 (E.D.La.1990). Rather, the party seeking protection of the opinions must establish that the expert was retained in anticipation of litigation. *Taroli v. General Elec. Co.,* 114 F.R.D. 97, 98 (N.D.Ind.1987). BIC has not argued that in-house expert Mr. Paul Labrum was specially retained for litigation purposes, rather he is described as a quality assurance manager. Therefore, the expert opinions of Paul Labrum are not protected from discovery by Rule 26(b)(4)(B).

*Outside Experts*

■■■ Shipes does not dispute that BIC's outside experts were retained in anticipation of litigation. Instead, plaintiff argues that Rule 26(b)(4)(B) only protects expert opinions developed in anticipation of this trial and that the opinions of experts in past products liability cases are relevant and discoverable. Neither the parties nor the court have found caselaw which confronts this issue.[9] Thus,

---

6. The following documents are protected by the self-critical analysis privilege:
 8–6–85 letter to Ms. Cathy Lusby from BIC counsel
 10–8–85 letter to Ms. Cathy Lusby from BIC counsel
 2–29–88 letter to Mr. Carlos Perez from BIC corporate counsel
 5–29–87 letter to Mr. William Moore from BIC corporate counsel
 In addition, lists submitted to the CPSC of claims against BIC which include estimates of property and injury damage amounts can be provided in redacted form.

7. In pertinent part Rule 26(b)(4) provides:
 Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
 (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert

witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion....
 (B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.... (emphasis added)

8. Naturally, when BIC designates an expert witness for trial, Shipes may obtain Rule 26(b)(4)(A) information.

9. While the caselaw may be silent on the interpretation of Rule 26(b)(4), the same phrase "in anticipation of litigation" is used in Rule 26(b)(3) concerning work product and courts have not required work product to be case specific. *See*

the court must make its decision by interpreting the rule itself. Rule 26(b)(4)(B) uses the phrase "in anticipation of litigation." It does not limit itself to "the" litigation or "this" litigation. Had the drafters intended to limit the protection to the pending case, they would have modified the word "litigation," as would be natural. The court interprets Rule 26(b)(4)(B) to apply to facts known and opinions held by an expert who was retained by a party in anticipation of any litigation. Discovery of the opinions of BIC's outside experts is not required as Shipes has not attempted to establish exceptional circumstances.

### 5. BIC LEGAL DEPARTMENT COMPUTER DATA BASE

■ BIC's in-house legal department maintains a computer data base to manage claims. The computer data base undoubtedly contains a substantial amount of work product which would be impossible to separate from non-work product. In fact, the entire system arguably constitutes work product as it was created in anticipation of litigation. The data base should not be any more vulnerable to discovery than were it maintained by outside counsel. Accordingly, the computer data base is not subject to discovery, although information which can be obtained from an alternate source does not become immune from discovery simply because it is also found on the data base.

### 6. SETTLEMENT DOCUMENTS

■ BIC seeks a protective order concerning the fact, amount, or negotiation of prior settlements in claims against BIC lighters. Federal Rule of Evidence 408 makes evidence of compromise or settlement of disputed claims inadmissible to show liability or invalidity of the settlement amount.[10] While Rule 408 deals only with admissibility at trial and not the scope of discovery, the rule

makes it unlikely that information about prior settlements will lead to the discovery of admissible evidence. Rule 26(b)(1). Other courts have required that one make a "particularized showing" that settlement information is likely to lead to admissible evidence before it can be discovered. *Morse/Diesel, Inc. v. Trinity Industries, Inc.,* 142 F.R.D. 80, 84 (S.D.N.Y.1992); *Bottaro v. Hatton Assoc.,* 96 F.R.D. 158, 160 (E.D.N.Y.1982) (better rule is to require some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of settlement terms). This position encourages settlements and protects their confidentiality while still allowing discovery if the information is truly relevant. This court, then, will require plaintiff to make a particularized showing in order to obtain discovery of settlement information.

### 7. MEDICAL RECORDS

■ The court has already found that the medical records contained in the lawsuit and claim files are subject to discovery. Discovery is appropriate regardless of whether the claimants filed suit or merely presented their claim to BIC's insurance carrier. The doctor patient privilege is waived both when a plaintiff files suit for personal injury or when a claimant voluntarily discloses his medical records to a third party. In either instance, the privilege has been waived and BIC must produce the medical records found in their lawsuit and claim files.

### CONCLUSION

BIC's motion for a protective order is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**

---

*Fine v. Facet Aerospace Products Co.,* 133 F.R.D. 439, 445 (D.C.N.Y.1990); *In re Grand Jury Proceedings,* 73 F.R.D. 647 (M.D.Fla.1977).

**10.** Rule 408 reads in pertinent part:
 Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a

claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statement made in compromise negotiations is likewise not admissible ... This rule also does not require exclusion when the evidence is offered for another purpose ...