Herbert JOINER and Paul Joiner, Individually and on behalf of a class of all other persons similarly situated, Plaintiffs,

v.

HERCULES, INC., Defendant.

Civil Action No. CV294–170.

United States District Court,
S.D. Georgia,
Brunswick Division.

Dec. 10, 1996.

John Chapman Bell, Jr., Pamela Sue James, Bell & James, Augusta, GA, Robert P. Killian, Lissner, Killian & Cunningham, Brunswick, GA, Joel O. Wooten, Jr., Jason Crawford, Butler, Wooten, Overby & Cheeley, Columbus, GA, for Plaintiffs.

Eugene G. Partain, C. Paul Chalmers, J. Kevin Buster, Carmen R. Toledo, King & Spaulding, Atlanta, GA, Mark David Johnson, James B. Gilbert, Jr., Lisa Sue Godbey, Wallace Eugene Harrell, Gilbert, Harrell, Gilbert, Brunswick, GA, for Defendant.

## ORDER

ALAIMO, District Judge.

On August 22, 1996, Plaintiffs filed an appeal of U.S. Magistrate Judge James E. Graham's ("Judge Graham") Order of August 12, 1996, in which he determined that several of Defendant's documents were entitled to vari-

ous privileges and, therefore, would not be produced to Plaintiffs. For the reasons stated below, Judge Graham's Order of August 12, 1996, will be **AFFIRMED**.

## FACTS

Plainly stated, Plaintiffs would like to have complete access to numerous documents and studies prepared by various employees of Defendant, Hercules ("Hercules"), for use in litigation. While Hercules has provided Plaintiffs with the vast majority of the documents requested in discovery,[1] Hercules objects to producing several documents based upon three different privileges. Those privileges are the attorney-client privilege, the work-product doctrine, and the "self-critical analysis" ("SCA")[2] privilege. In addition to their other arguments, Plaintiffs also assert that an in-house remediation cost study prepared by Tim Hassett ("Hassett Study") should be produced, since Plaintiffs have a "substantial need" for that document. Plaintiffs also assert that interrogatories and depositions would not constitute the "substantial equivalent" of the Hassett Study, given its length and complexity.

Judge Graham determined that, of those documents sought by Plaintiffs, twenty-six documents are discoverable, and are not protected by any privilege. The remainder were deemed privileged. Pursuant to Hercules' Motion for Reconsideration, Judge Graham reconsidered his Order of August 12, 1996, and determined that, in fact, seven of those twenty-six documents *are* privileged and, therefore are not subject to discovery.[3]

On August 22, 1996, Plaintiffs filed this appeal requesting the Court to overturn Judge Graham's prior determinations con-

1. Hercules has already produced approximately 80,000 documents for review by Plaintiffs. (*See* Def.'s Resp. to Pls.' Br. in Supp. of the Appeal at 1.) Furthermore, Plaintiffs have copied approximately 55,000 documents from Hercules' facilities. (*Id.*) Of all of the aforementioned documents, Hercules has asserted that approximately 280 are privileged.

2. The parties and several courts have labeled this newly created "privilege" differently. It is

known as the self-critical evaluation privilege, self-critical examination privilege, and even the self-audit privilege. For ease of reference, the term "self-critical analysis" will be used throughout this Order.

3. The Court accepts Judge Graham's reconsideration of those documents. Thus, the following documents are, in fact, privileged and shall not be produced by Defendant, Hercules: 4–16; 5–2; 5–16; 13–6; 13–7; 13–12; 20–7.

cerning the application of the three privileges to Hercules' documents.[4]

In reviewing the documents produced for Judge Graham's original *in camera* inspection, it became clear to the Court that several of the documents listed on Hercules' privilege log were missing from the Court's evidence vault. On November 12, 1996, the Court ordered Hercules to produce those missing documents for review. In responding to the Court's Order, Hercules asserted that it produced to Judge Graham all documents that the parties agreed should be produced for Judge Graham's *in camera* inspection. After reviewing the pleadings and responses filed with the Court, it appears that there is substantial confusion between the parties concerning which documents should have been produced for Judge Graham's inspection. The Court limits its review to those documents originally reviewed by Judge Graham, as those are the only documents "ripe" for appeal at this stage.[5]

The Court is convinced that Hercules did not withhold any documents in bad faith from Judge Graham. After a detailed explanation by Hercules regarding the production of documents for the *in camera* review, the Court finds that Hercules produced all documents required to be produced for Judge Graham's *in camera* inspection.

## DISCUSSION

### I. Standard of Review

■ Federal magistrate judges, by law, may decide non-dispositive motions. *See* 28 U.S.C. § 636(b)(1). Sitting in its appellate capacity, the Court is required to review this matter under a "clearly erroneous" standard. *See id.* at § 636(b)(1)(A); *Knox v. Hayes*, 933 F.Supp. 1573, 1575 (S.D.Ga.1995) (stating that in non-dispositive, pre-trial matters, a district court reviews a magistrate judge's order under a clearly erroneous standard); *Massey v. United Transp. Union*, 868

F.Supp. 1385, 1388 (S.D.Ga.1994) (stating that a magistrate judge's order will be set aside when clearly erroneous or contrary to law), *aff'd*, 65 F.3d 183 (11th Cir.1995).

Accordingly, unless Judge Graham's determinations with respect to the privileges claimed by Hercules were clearly erroneous, or contrary to law, those determinations shall not be disturbed.

### II. Attorney–Client Privilege

■ Federal Rule of Civil Procedure 26(b)(1) governs what items or materials may be discovered. That rule allows discovery of any matter, not privileged, which is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). That general rule is limited by privileges, which are determined by state, not federal, law. Fed.R.Evid. 501; *see also Shipes v. BIC Corp.*, 154 F.R.D. 301 (M.D.Ga.1994).

■ Pursuant to Georgia law, "a client's communications to his attorney are privileged." *Shipes*, 154 F.R.D. at 304 (citing Ga.Code Ann. § 24–9–24 (1982)). However, those communications must be both confidential and must be "related" to obtaining legal advice. *Id.* The privilege applies both to individuals and to corporations. *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (applying the privilege to in-house counsel in a corporate setting); *Marriott Corp. v. American Academy of Psychotherapists, Inc.*, 157 Ga.App. 497, 277 S.E.2d 785 (1981) (listing the factors required for the "corporate" privilege to apply). Furthermore, the "privilege is *absolute*, prohibiting discovery of the privileged materials *regardless of need.*" Shipes, *154 F.R.D. at 304 (emphasis added).*

In reviewing the voluminous documents and files delivered to the Court, it is appar-

---

4. In addition to their briefs in support of, and in opposition to, the current motion, the parties have incorporated by reference their prior submitted briefs on these issues. In deciding this matter, the Court has reviewed those briefs, the privilege logs submitted by Hercules, and all of the numerous documents and files provided to Judge Graham for his *in camera* review.

5. Obviously, the documents produced for Judge Graham's *in camera* inspection are those documents listed on Hercules' privilege log that are *not* listed in the Court's Order of November 12, 1996, which listed all documents missing from the Court's evidence vault. The Court hereby vacates its production Order of November 12, 1996. Furthermore, the Court notes that discovery in this case has concluded. (*See* Judge Graham's Order dated December 9, 1996.)

ent that Hercules has asserted, in many instances, two or three privileges for each document or file containing several documents. The Court has reviewed those documents and files designated privileged by the "attorney-client" privilege and determined that, with the exception of those items required to be disclosed by Judge Graham, the privilege applies where asserted by Hercules. The Court has found no clear error in Judge Graham's determinations.

Furthermore, the Court disagrees with Plaintiffs that Hercules engages in "attorney gate-keeping," or sending documents through in-house counsel merely to assert a privilege at some later point in time. (*See* Pls.' Br. in Opp'n to Objections at 1.) If that were true, then far more documents would have been "routed" through Hercules' counsel than evidenced by those documents over which Hercules has asserted this privilege.

Accordingly, those documents deemed privileged by Judge Graham, including those subject to his reconsideration, based upon the attorney-client privilege shall remain privileged in this case.

### III. *Work–Product Doctrine*

■■■ The work-product of an attorney is also protected by privilege. *See* Fed. R.Civ.P. 26(b)(3). The test to determine whether a document constitutes a work-product is "whether it was prepared by the party or his representative because of the prospect of litigation." *Shipes,* 154 F.R.D. at 305 (citing 8 Wright & Miller, Federal Practice and Procedure § 2024 at 198).[6] Furthermore, the party's "representative" includes not only his attorney, but also his employee, insurer or other agent, "so long as they were working on behalf of the party and preparing the document with the prospect of litigation in mind." *Id.* While the attorney-client privilege is absolute, the work-product doctrine is not. In fact, it has often been referred to as a "qualified immunity," rather than as a "privilege." *Shipes,* 154 F.R.D. at 305. A party may obtain work-product documents upon a showing of "substantial need

for the materials and necessity." *Id.* The party, therefore, must "show that he cannot obtain the substantial equivalent of the work-product through other efforts, such as conducting his own investigations, and that he has a substantial need for the materials in prosecuting his case." *Id.*

Once again, the Court has reviewed those documents and files that Hercules claims are protected by the work-product doctrine. The Court, again, has found no clear error in Judge Graham's prior determinations. With the exception of those documents and files required to be disclosed in Judge Graham's Order of August 12, 1996, as reconsidered by his Order of October 17, 1996, the work-product doctrine protects those documents and files for which Hercules claims the privilege. Judge Graham's prior Orders will not be disturbed.

### IV. *SCA Privilege*

After reviewing the documents in this case, it is apparent that Hercules bases many of its privilege arguments on the SCA privilege, which Hercules claims applies to several of the documents and files produced for the *in camera* review. Plaintiffs contend that the SCA privilege does not even exist and, therefore, does not protect Hercules' documents. Plaintiffs point to the absence of the SCA privilege in the Georgia Code to support their argument.

While the Georgia legislature has not yet clearly embraced the SCA privilege, several courts, however, have recognized it. *See Reichhold Chems., Inc. v. Textron, Inc.,* 157 F.R.D. 522 (N.D.Fla.1994) (applying the privilege on a qualified basis to environmental clean-up cases); *Shipes,* 154 F.R.D. at 306–07 (applying the privilege in products liability cases); *Emory Clinic v. Houston,* 258 Ga. 434, 369 S.E.2d 913 (1988) (applying the privilege to medical peer reviews); *Banks v. Lockheed–Georgia Co.,* 53 F.R.D. 283 (N.D.Ga.1971) (applying the privilege to self analysis reports prepared in the area of equal employment opportunity); *but cf. Unit-*

---

**6.** The work-product privilege is not defined as a substantive privilege. *Shipes,* 154 F.R.D. at 305

n. 2. As such, federal law, not state law, applies.

*ed States v. Southern Bell Tel. & Tel. Co.,* 915 F.Supp. 308 (N.D.Fla.1996) (refusing to apply the privilege in *qui tam* actions based on the False Claims Act).

The policy supporting the SCA privilege mirrors the statutory medical "peer review" privilege. *Shipes,* 154 F.R.D. at 307. Basically, the policy behind the SCA privilege in this particular case is to encourage a private company to perform self-audits, in order to comply fully with environmental laws, without fear that those audits will be discoverable.[7]

 The documents and files for which Hercules claims that the SCA privilege applies were prepared or created by Hercules in order to evaluate the company's compliance with environmental laws and regulations. The privilege also is intended to encourage companies to comply voluntarily with environmental laws and regulations in an effort to protect the health, safety, and welfare of all. *See generally Reichhold Chems.,* 157 F.R.D. at 526 (recognizing that "[t]here are sound policy reasons favoring the general adoption of a [SCA] privilege").

Given that at least two other federal courts in Georgia have recognized the SCA privilege, and that it "promote[s] sufficiently important interests to outweigh the need for probative evidence ..." in this case, the Court finds that the SCA privilege protects those documents over which Hercules claims the privilege. *See id.* (quoting *University of Pa. v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571, 582 (1990)).

The Court finds that the case law establishing and outlining the SCA privilege provides a legal basis upon which Hercules may assert that privilege. As such, the Court finds that Judge Graham's reliance on the case law supporting the SCA privilege is not clearly erroneous and those documents pro-

tected under that privilege shall not be disclosed to Plaintiffs.

## V. *Hassett Study*

Plaintiffs assert that the Hassett Study should be disclosed fully to them since it is protected by neither the work-product doctrine nor the attorney-client privilege. The Court disagrees. Hercules convinced Judge Graham that the Hassett Study is privileged. Hercules, likewise, has convinced the Court that both the attorney-client privilege and the work-product doctrine apply to protect the Hassett Study from disclosure.

 Hercules filed affidavits from in-house counsel, Vera Holmes ("Holmes") and Hassett, attesting to the fact that the Hassett Study was prepared at the specific request of in-house counsel in connection with a separate insurance coverage lawsuit. (*See* Hassett Aff. at 2; Holmes Aff. at 2). As an absolute privilege, the attorney-client privilege protects the Hassett Study from disclosure.

 Additionally, Plaintiffs cannot overcome the application of the work-product doctrine simply by asserting that they "need" the document. The Court disagrees that Plaintiffs have made a substantial showing of the need for production of the document. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It appears that Plaintiffs have performed their own independent remediation estimate in this case, which severely undermines their assertion that there is no way for them to ascertain the remediation costs for the area in question. (*See* Def.'s Resp. to Pls.' Br. in Supp. of the Appeal at 9 n. 3.) Moreover, Hercules has filed a remediation cost estimate prepared by its experts and has offered its estimate of the cost of remediating the site in question at $380,000. (*See* Def.'s Supp. Rule 26.3 Interrog. Resps.) In other words, Hercules has

---

7. In *Shipes,* the court established guidelines to determine whether the SCA privilege applies. The document must (1) result from a critical self-analysis performed by the party seeking protection, (2) the public must have a strong interest in preserving the free flow of information sought, (3) the information must be the type whose creation would be curtailed if discovery were allowed, and (4) the information must have been

offered details of the Hassett Study, although they will not produce the privileged document.[8]

### CONCLUSION

The Court has considered the arguments waged by Plaintiffs in this appeal. For the foregoing reasons, Judge Graham's Order of August 12, 1996, as amended by his Order of October 17, 1996, is hereby **AFFIRMED.**

**SO ORDERED.**

---

created with the expectation that it would be and remain confidential. *Shipes,* 154 F.R.D. at 307.

**8.** Plaintiffs assert in their brief that "[r]eview of the [Hassett Study] is the only realistic way in which the Plaintiffs could learn Hercules's own estimates of the costs it would expect to incur in remediating the class area." (*See* Pls.' Br. in Supp. of the Appeal at 10.) Hercules has filed its estimate of the expected cost of remediation. More importantly, *Plaintiffs* have informed the Court in their brief of that estimate. (*Id.*) Thus, logic dictates that there are, in fact, other ways that Plaintiffs can learn of Hercules' cost estimates.