**UNITED STATES of America,**
**Plaintiff,**

v.

**Douglas MESADIEU, Defendant.**

**Case No: 6:14–cv–1538–Orl–22TBS**

United States District Court,
M.D. Florida,
Orlando Division.

Signed September 30, 2015

Alison Austen Yewdell, Daniel A. Applegate, Sean Green, Jared S. Wiesner, Josh-

ua Y. Levine, Steven C. Woodliff, U.S. Department of Justice, Washington, DC, for Plaintiff.

Mark L. Horwitz, Cassandra A. Snapp, Law Offices of Mark L. Horwitz, PA, Orlando, FL, for Defendant.

### *ORDER*

THOMAS B. SMITH, United States Magistrate Judge

THIS MATTER comes before the Court on Defendant's Motion to Compel Production (Doc. 36) and the United States' response in opposition (Doc. 37). The motion is due to be **denied.**

The Government alleges that Defendant Douglas Mesadieu, in his capacity as a tax preparer and through various business entities, has committed multiple acts of fraud (Doc. 1). As remedies, the Government seeks to enjoin him from preparing and filing federal tax returns and that he be compelled to disgorge the profits he and his businesses received for the preparation of federal tax returns that allegedly contained false or fraudulent claims (*Id.* at 1–2).

The Government brings this lawsuit pursuant to 26 U.S.C. §§ 7402, 7407, and 7408 (Doc. 1). Section 7407(a) states that actions "to enjoin any person who is a tax return preparer from further engaging in any conduct described in subsection (b) or from further acting as a tax return preparer may be commenced at the request of the Secretary." Section 7408(a) provides that "[a] civil action in the name of the United States to enjoin any person from further engaging in specified conduct may be commenced at the request of the Secretary." In these statutes, "Secretary" means the Secretary of the Treasury or his delegate. 26 U.S.C. § 7701(a)(11)(B). "Delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury, directly or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context...." (*Id.* at § 7701(a)(12)(A)(i)). The Government's complaint avers "[t]his action has been requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General, pursuant to I.R.C. §§ 7402, 7407, and 7408." (Doc. 1, ¶ 2).

Defendant asked the Government to produce "[a]ny written direction from Chief Counsel authorizing this action and seeking remedy of disgorgement from Douglas Mesadieu." (Doc. 36, at 1). The Government objected on the grounds that the information is not relevant to whether Defendant has violated the Internal Revenue Code, it is at most a procedural requirement, and the information is protected from discovery by the attorney-client and work product privileges (*Id.*, at 1–2).

The Government filed the declaration of IRS associate area counsel Kenneth A. Hochman in support of its objections (Doc. 37–1). Hochman declares that as an employee with the Office of Chief Counsel for the Internal Revenue Service, he approved and signed the referral letter to the Department of Justice ("DOJ"), requesting and authorizing that the Tax Division file a lawsuit against Douglas Mesadieu under 26 U.S.C. §§ 7402(a), 7407(a) and 7408(a) (*Id.*, ¶ 3). According to Hochman, the referral letter presented the then-known facts and relevant law to the DOJ, "for the purpose of requesting legal advice, legal opinion, and assistance of the Department of Justice attorneys, including a decision on whether to file the lawsuit that the IRS requested against Douglas Mesadieu based on the facts and relevant law presented in the referral letter." (*Id.*, ¶ 5).

■ To invoke the attorney-client privilege, a party must establish:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Noriega,* 917 F.2d 1543, 1550 (11th Cir.1990) (citing *United States v. Kelly,* 569 F.2d 928, 938 (5th Cir.), cert. denied, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123, (1978)).

■ "[A]n agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege." *Rein v. U.S. Patent & Trademark Ofc.,* 553 F.3d 353, 376 (4th Cir.2009) (quoting *Coastal States Gas Corp. v. Dept. of Energy,* 617 F.2d 854, 863 (D.C.Cir.1980)). Federal courts have recognized and protected from disclosure, based upon the attorney-client privilege, communications between the IRS and the DOJ. *See LSB Indus., Inc. v. C.I.R.,* 556 F.Supp. 40, 44 (W.D.Okla.1982) (attorney-client privilege applied to documents relating to federal tax investigation of plaintiff, including memoranda authored by IRS regional counsel requesting grand jury investigation); *Green v. I.R.S.,* 556 F.Supp. 79, 81, 85 (N.D.Ind.1982) (protecting from disclosure based upon the attorney-client privilege a letter from the Indianapolis District Counsel requesting the United States Attorney to initiate legal proceedings to enforce an IRS summons in conjunction with the ongoing investigation of the plaintiff). *See also In re County of*

*Erie,* 473 F.3d 413, 418 (2d Cir.2007) ("[T]he attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance.").

■ The referral letter was written by IRS Senior Attorney Kimberly Daigle and signed by Hochman on behalf of IRS Chief Counsel William J. Wilkins (Doc. 37–1, ¶ 3). It is addressed to Kathryn Keneally, Assistant Attorney General for the United States Department of Justice, Tax Division (*Id.*). The referral letter was written in part, to obtain legal advice from the DOJ (*Id.,* ¶¶ 5–6). It contains counsel for the IRS' views, mental impressions and analysis of relevant law and then known facts (*Id.,* ¶ 4). The letter cautions that its contents are being conveyed in confidence (*Id.,* ¶ 6). There is no indication that the referral letter or its contents was shared with anyone outside the IRS or DOJ. There is no suggestion that the communication was made with the intent to commit a tort or crime. And, there is no indication that when the attorneys at DOJ read the referral letter they were acting in any capacity other than as members of a court bar acting as lawyers. Accordingly, the Court finds that the referral letter is an attorney-client privileged communication.

Defendant argues that the referral letter cannot be protected by the attorney-client privilege because its content (the authorization to bring this lawsuit), is a fact alleged in the Government's complaint, and is a prerequisite to this lawsuit (Doc. 36 at 4). The Court is not persuaded. Nothing in 26 U.S.C. §§ 7407 or 7408 requires the authorization to be in writing, and the Court fails to understand why the fact that the authorization is in writing somehow mandates its disclosure, if it is protected by the attorney-client privilege.

The Government also claims protection of the referral letter based upon the work product doctrine. "The attorney-work-product doctrine protects from disclosure materials prepared by an attorney acting for his client in anticipation of litigation." *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir.1979)[1] (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). "The test to determine whether a document constitutes work product is whether it was prepared by the party of his representative because of the prospect of litigation." *Shipes v. BIC Corp.,* 154 F.R.D. 301, (M.D.Ga.1994). "A party's representative includes its attorney, insurer, employee, or other agent, so long as they were working on behalf of the party and preparing the document with the prospect of litigation in mind." *Id.* " 'The burden of establishing that a document is work product is on the party who asserts the claim.' " *Freiermuth v. PPG Industries, Inc.,* 218 F.R.D. 694, 700 (N.D.Ala.2003) (quoting *Hodges, Grant & Kaufmann v. United States Government, Dept. of the Treasury, Internal Revenue Service,* 768 F.2d 719, 721 (5th Cir.1985)).

Under FED. R. CIV. P. 26(b)(3), litigation documents which contain the mental impressions, conclusions, opinions, and legal theories of counsel (or a party's representative) are afforded absolute immunity from discovery. *See e.g. Board of Trustees of Leland Stanford, Jr. Univ. v. Coulter Corp.,* 118 F.R.D. 532, 534 (S.D.Fla.1987). "[O]ther relevant, unprivileged documents which are prepared in anticipation of litigation by or for another party or that party's representative," may be discoverable, but "only upon a showing of a substantial need for the documents and the inability to obtain the requested documents by other means without undue hard-

ship." *Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland,* 131 F.R.D. 596, 600 (M.D.Fla.1990); FED. R. CIV. P. 26(b)(3).

The referral letter contains attorneys Hochman and Daigle's views, mental impressions and analysis. The Court finds this information is absolutely immune from discovery by Defendant. To the extent that Defendant is seeking only that part of the letter containing the authorization language, this information is contained in Hochman's declaration and can also be obtained by way of an interrogatory or deposition. Therefore, there is no undue hardship warranting production of the referral letter or any non-privileged portion of it.

For the foregoing reasons, Defendant Douglas Mesadieu's Motion to Compel Production (Doc. 36) is **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida on September 30, 2015.

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding prece-

dent all decisions of the former Fifth Circuit handed down before October 1, 1981.