## 37008. HOLLOWELL v. JOVE et al.

SMITH, Justice.

Pursuant to Rule 36 of this court, the U. S. Court of Appeals, Fifth Circuit, has certified questions arising in the above-styled case, on appeal from the U. S. District Court for the Northern District of Georgia.

The basic facts of this case, set forth in Hollowell v. Jove, 628 F2d 513 (5th Cir. 1980), are as follows: "On December 11, 1973, Hazel Bachelor Dickens, the Appellant's decedent, a resident of DeKalb County, Georgia, was admitted to the Appellee DeKalb General Hospital, with a diagnosis of transcervical fracture of the hip. During her hospital stay, Ms. Dickens was attended by the Appellee Julio Jove, M.D. On December 27, 1973, she was released from the Hospital, but was returned to its emergency room five hours later and pronounced dead on arrival. An autopsy indicated that she had died of a pulmonary embolism.

"The decedent's daughter, Sheila Hollowell, brought this action in the United States District Court for the Northern District of Georgia, Atlanta Division, on December 26, 1975, alleging that Dr. Jove failed to undertake prophylactic measures to prevent the formation of blood clots in the decedent's legs and was, therefore, negligent. The Appellant further alleged that the hospital was negligent in allowing Dr. Jove to treat patients when it knew or should have known that he lacked the necessary skill, training and experience to treat patients suffering from the condition for which the decedent was hospitalized. (R. 6-7).

"In its present posture, this case involves a discovery dispute between the parties. On April 2, 1976, Appellant filed First Continuing Interrogatories to Dr. Jove (R. 33-52). On May 6, 1976, Appellant filed First Continuing Interrogatories to the Hospital (R. 53-76), followed by Appellant's Second Continuing Interrogatories to the Hospital (R. 77-79) on May 10, 1976. On October 5, 1976, Appellant's counsel took the deposition of Dr. Jove. The discovery dispute arose because certain of the interrogatories propounded to the Appellees and certain questions propounded to Dr. Jove at the time of his deposition sought to discover whether any hearings or proceedings were conducted by hospital committees concerning the care provided by Dr. Jove to the decedent or to any other patient whom he had treated in the hospital. The Appellees objected to these questions on the grounds that the information sought was made absolutely privileged, confidential and nondiscoverable by virtue of the provisions of Ga. Code Ann. § 88-3201, *et seq.* (R. 87-88, 100 and 102).

"On November 3, 1976, Appellant filed a Motion to Compel Discovery requesting that the defendants be required to admit if any hospital committee hearings had ever taken place concerning the care rendered by Dr. Jove to the decedent or any other patient, and to divulge the names of those who participated in and/or were present at such meetings or hearings (R. 131-163). Both sides filed several briefs setting forth their positions with regard to Appellant's Motion to Compel Discovery (R. 164-167, 168-178, 179-183, 184-200), and, on April 11, 1977, the Court issued an order directing that the Hospital produce certain documents for the Court's *in camera* inspection, and denying the plaintiff's motion in all other respects (R. 201-203). The Appellant filed a Motion for Certification of the Court's Order (R. 204-209), which was denied (R. 222-226). Upon reviewing the documents produced for *in camera* inspection, the Court initially required the Hospital to produce the documents noting that none of the documents which were not disclosed relate to any investigation of the incident which is the subject matter of the instant action.

"Subsequently, the Hospital filed a Motion for Reconsideration concerning certain of the documents which the Court had ordered it to produce (R. 216-221). Upon reconsideration, the Court declined to compel production of documents relating to the decision by one of the Hospital committees to restrict Dr. Jove's privileges with respect to the performance of anterior cervical fusion operations. (R. 225). The Court, however, did require the Hospital to produce all documents in Dr. Jove's personnel file relating to his initial appointment to the medical staff and documents relating to his periodic reappointment (R. 226).

"As a result of the various orders of the District Court, the Appellant was unable to obtain any records generated by the Hospital's peer review committees, whether or not the committees actually considered care rendered to the decedent or care rendered to other patients (R. 226). The Appellant's position is that, by virtue of the Court's various orders, she was prevented from developing any admissible evidence from persons who may have been present at any meetings of the Hospital's Quality Assurance Committee — the 'original sources' specifically exempted by Ga. Code Ann. § 88-3204.

"On July 19, 1977, the Appellant submitted a Motion for Reconsideration (R. 236-240), which was subsequently denied (R. 288). Discovery progressed with Appellant filing her Third Continuing Interrogatories to the Hospital on September 27, 1977 (R. 245-247), and Fourth Continuing Interrogatories to the Hospital on October 19, 1977 (R. 251-254). . . .

"The trial of the case commenced on January 8, 1978, and lasted

until January 17, 1978, on which date the jury found in favor of the Appellees."

### Questions Certified

"(1) Does the legislation relating to records of Medical Review Committees contained in Georgia Code Annotated § 88-3201, *et seq.,* apply to records of Medical Review Committee activity engaged in before these statutes were enacted?

"(2) If the answer to question (1) is yes, does such application violate the prohibition on retro-active laws, now codified as Georgia Code Annotated § 2-107, or any other provision of the Georgia Constitution?

"(3) What is the proper breadth of application of such legislation in medical malpractice matters, i.e., does it cover records relating to care of patients other than plaintiff or the decedent whose estate or interests are represented by plaintiff, does it cover information related to the defendant physician's general competence, his competence to treat the condition from which the decedent suffered as evidenced by his treatment of other similarly afflicted patients, or competence to perform medical procedures other than those specifically involved in the subject litigation, does it cover information such as whether any Medical Review Committee meetings related to the care of the decedent whose interests are represented by plaintiff were held or who attended such meetings, does it cover information generated or maintained by entities other than 'Medical Review Committees' as defined in the legislation."

"[T]he purpose for the enactment of Code Ann. § 88-3204 is to foster the delivery of quality medical services by preserving the candor necessary for the effective functioning of hospital medical review committees." *Eubanks v. Ferrier,* 245 Ga. 763, 766 (267 SE2d 230) (1980). The statute legislatively approves the view that "[c]onstructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit." Bredice v. Doctors Hospital, Inc., 50 FRD 249, 250 (D.D.C. 1970). "It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence." Schulz v. Superior Court for County of Yolo, 66 Cal. App. 3d, 440, 445-446 (136 Cal. Rptr. 67) (1977). Given this underlying purpose, we do not believe the legislature intended that Code Ann. § 88-3204 should apply to medical review committee activity engaged in before its effective date even though a discovery request is made after such time. No one who participated in a medical review committee proceeding prior to the effective date of Code Ann. § 88-3204 could have been influenced by the protections afforded thereunder. The harm occasioned by the non-existence of Code Ann.

§ 88-3204 (i.e., less candid medical review committee proceedings) is an unalterable fact. Accordingly, the first certified question must be answered in the negative.

As the second certified question is expressly conditioned upon an affirmative response to the first, we shall proceed to the final certified question.

" 'It is, of course, fundamental that "the cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose." *Ford Motor Co. v. Abercrombie,* 207 Ga. 464, 467 (62 SE2d 209) . . .' *City of Jesup v. Bennett,* 226 Ga. 606, 608 (176 SE2d 81) (1970)." *Wall v. Board of Elections of Chatham County,* 242 Ga. 566, 573-574 (250 SE2d 408) (1978). Although "the legislative intent prevails over the literal import of words" *(Drake v. Thyer Mfg. Corp.,* 105 Ga. App. 20, 22 (123 SE2d 457) (1961)), "where a constitutional provision or statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. [Cits.]" *Rayle Electric Membership Corp. v. Cook,* 195 Ga. 734, 735 (25 SE2d 574) (1943). "In other words the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent." Caminetti v. United States, 242 U. S. 470, 490 (37 SC 192, 61 LE 442) (1917); Samuelson v. Susen, 576 F2d 546, 552 (3d Cir. 1978).

In addition to the above rules of construction, we must also consider that Code Ann. § 88-3204 is in derogation of the general policy in favor of the discovery and admissibility of probative evidence. See CPA § 26(b)(1) (Code Ann. 81A-126(b)(1)); Elkins v. United States, 364 U. S. 206, 234 (80 SC 1437, 4 LE2d 1669) (1960). "Evidentiary privileges operate to exclude relevant information from the fact finder and thus are not favored." Robinson v. Magovern, 83 FRD 79, 85 (W.D. Pa. 1979). "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." United States v. Nixon, 418 U. S. 683, 710 (94 SC 3090, 41 LE2d 1039) (1974); Davison v. St. Paul Fire & Marine Ins. Co., 75 Wis. 2d 190 (248 NW2d 433) (1977).

With the above principles in mind, we shall answer the specific inquiries of the Fifth Circuit regarding the proper scope of application of Code Ann. § 88-3201 et seq.

a) Code Ann. § 88-3204 provides in part: "The proceedings and records of committees as described in the foregoing provisions of this Chapter shall not be subject to discovery or introduction into

evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions, or other actions of such committee or any members thereof." In our view, the term "proceedings and records" includes records of a medical review committee relating to care of patients other than the plaintiff or the decedent whose estate or interests are represented by the plaintiff. Such a broad range exclusion is necessary to promote the underlying purpose of the section and is clearly authorized by the statutory language. It is apparent that a candid evaluation of a physician's performance will likely necessitate a discussion of services rendered to patients other than the plaintiff or his decedent.

b) It follows from what has just been said that Code Ann. § 88-3204 applies to information *generated in the course of medical review committee proceedings* which relates to the physician's general competence, his competence to treat the condition from which the decedent suffered as evidenced by his treatment of other similarly afflicted patients and his competence to perform medical procedures other than those specifically involved in the subject litigation. We must note, however, that "information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee." Code Ann. § 88-3204.

c) The discovery of whether any medical review committee meetings relating to the care of the decedent were held and who attended the meetings necessitate an intrusion into the "proceedings" of the committee. We therefore conclude that such information is nondiscoverable under Code Ann. § 88-3204.

d) Code Ann. § 88-3201 defines the term "medical review committee" as a "committee of a State or local professional society or of a medical staff or a licensed hospital, nursing home, medical foundation or peer review committee, provided the medical staff operates pursuant to written bylaws that have been approved by the governing board of the hospital or nursing home, which is formed to evaluate and improve the quality of health care rendered by providers of health service or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of

professional health services in the area."

In order for the information generated or maintained by a committee exercising review functions to be subject to the provisions of Code Ann. § 88-3201 et seq., the committee must meet the qualifications set forth in Code Ann. § 88-3201. The legislature could have defined a "medical review committee" more broadly than it did. See 63 Pa. Stat. Ann., § 425.2 (Purdon). We must presume that its failure to do so was a matter of considered choice.

*First question answered in the negative; second question not decided; third question answered: a) Yes b) Yes c) Yes d) No. All the Justices concur, except Jordan, C. J., who concurs specially.*

DECIDED JUNE 16, 1981.

*Johnson, Ward, Stanfield, Lanham & Carr, James C. Carr, Jr., Lee J. Dunn, Jr.,* for appellant.
*Doster, Allen & Young, Hunter S. Allen, Jr., Samuel F. Doster, Jr., Lorraine D. Hess,* for appellees.
*Jones, Bird & Howell, Jack Spalding Schroder, Jr., Scott R. Owens,* amicus curiae.