*John C. Pridgen,* for appellees.

**71773. CHASE & TAYLOR, INC. v. MILAM.**
(348 SE2d 74)

DEEN, Presiding Judge.

The issue is whether OCGA § 43-40-24 (b) (formerly Ga. Code § 84-1404) permits a Georgia-licensed real estate broker to sue for a sales commission arising solely out of the acts of a sales agent who was licensed in a foreign state. The trial court, having construed the law to require the agent to be Georgia-licensed also, directed a verdict for defendants upon the application of the statute to those undisputed facts.

The undisputed facts are these: "[T]he sole agent, servant and employee for Plaintiff performing any real estate acts in this transaction was Mr. Lowell Grattan. . . . Lowell Grattan is licensed in the State of California with the California Real Estate Commission, and is not, and never has been, licensed in the State of Georgia . . . Lowell Grattan actively participated in the acts of a real estate sales person within the State of Georgia." It appears also to be without dispute that the commission in question related to a 1980 transaction negotiated by Grattan with Californian Lee Brandenburg involving the sale of property in north Fulton County.

Plaintiff contended that there was a commission division agreement between it and defendants which was breached by defendants' refusal to share the commission earned. It further contended that the original agreement was modified after Grattan became employed by plaintiff as an associate broker, so as to substitute plaintiff for Grattan on transactions involving investors introduced to defendants through plaintiff or Grattan acting on behalf of plaintiff. Thereafter, it contended, the agreement was further modified to cover the Brandenburg transactions specifically; the sale ultimately took place, but defendants refused to honor the commission agreement. Consequently, plaintiff filed suit.

OCGA § 43-40-24 (b) or its predecessor controls in this case. Cases decided under this section, *Berchenko v. Fulton Fed. Savings &c. Assn.,* 244 Ga. 733 (261 SE2d 643) (1979); *Krizan v. Newman & Co.,* 246 Ga. 214 (271 SE2d 135) (1980); *Wanamaker v. Esther Wynne Realty,* 163 Ga. App. 338 (294 SE2d 581) (1982), bar from maintaining an action for real estate commissions only a broker who does not hold a Georgia real estate license. Where, as here, plaintiff broker does possess a proper license, there are no such limitations. This would obtain even though the commission arose solely out of the acts of a sales agent who was licensed only in a foreign state. The trial

court erred in construing the law to require the agent to be Georgia-licensed.

*Judgment reversed. Banke, C. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, Pope and Benham, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

The Code section at issue, former Ga. Code § 84-1404, was part of a comprehensive revision of the real estate brokers and salesmen's chapter in 1973. Ga. L. 1973, pp. 100, 104. The Act required a broker, associate broker, or salesman to be licensed in Georgia before under-taking any part of a real estate transaction. The actions prohibited without licensing were of broad scope and included even holding one-self out as a broker, associate broker or real estate salesman in Geor-gia. Doing any of these acts, without a Georgia license and its predi-cate examination, was declared to be a violation of the law, Ga. Code § 84-1402, and anyone who violated the Chapter was guilty of a mis-demeanor. Ga. L. 1973, pp. 100, 126, Sec. 2. The qualifications and eligibility for a license were extensive. Ga. Code §§ 84-1409, -1410, -1411. Accommodation was made for nonresident brokers and sales-men. Ga. Code § 84-1415.

In addition to the criminal sanction, the Act foreclosed court en-forcement of compensation entitlements for any of the acts covered by the Chapter, which is the measure focused on here, and in addition authorized the Georgia Real Estate Commission to originate a com-plaint for any violation. Ga. Code § 84-1404.

The Code section in question has been construed by the appellate courts to have a public interest thrust. In *Keenan Co. v. Pamlico, Inc.*, 245 Ga. 842 (268 SE2d 334) (1980), the Supreme Court inter-preted it as applying when the acts essential to the recovery of a com-mission are performed in Georgia, but said that "(t)here is no public interest of this state to be served by regulating the activities of li-censed real estate brokers of ·other states, which take place outside the state, . . ." Id. at 844. The Court found as fact that the transac-tion in that case was an interstate one and thus not covered.

This court in *Krizan v. Newman & Co.*, 153 Ga. App. 337, 339 (3) (265 SE2d 68) (1980), aff'd 246 Ga. 214 (271 SE2d 135) (1980), stated: "The statute which bars plaintiff's maintenance of this action is·one founded upon public policy and purpose. Any benefit to the defend-ant in this regard is incidental to the public interest. The principle exists in contract law and has been with us for many years. 'It is ob-jected that the defendant should not be heard, to set up the illegality of the transaction for his own benefit. The reply is, that courts sustain such a defense, not for the sake of the defendant, but upon general principles of public policy.' [Cit.]" The Supreme Court, in affirming,

rejected the argument that the statute was "an unreasonable or illegal burden on interstate commerce," citing *Head v. New Mex. Bd.*, 374 U. S. 424 (83 SC 1759, 10 LE2d 983) (1963). *Krizan v. Newman & Co.*, supra, 246 Ga. at 216. It also explicitly affirmed the opinion of this court related to the public policy grounds.

The protection of person and property was then, and is now, the paramount duty of government in Georgia. Ga. Const. 1976, Art. I, Sec. II, Par. III; Ga. Const. 1983, Art. I, Sec. I, Par. II. The patent purpose of the Act under discussion is to protect those involved in Georgia real estate transactions by requiring a certain degree of "honesty, trustworthiness, integrity and competence" (Ga. Code § 84-1410) of brokers, associate brokers, and salesmen. The Act is "regulatory in nature" and "recognizes certain minimum standards for persons engaged in the real estate business." *Kimball Bridge Rd. v. Everest Realty*, 141 Ga. App. 835, 837 (2) (234 SE2d 673) (1977). As the court said in *Berchenko v. Fulton Fed. Savings &c. Assn.*, 149 Ga. App. 526, 527 (254 SE2d 745) (1979): "We believe it is clear from the above provisions [Ga. Code §§ 84-1402, -1401 (b)] that the legislature intended to require a person to obtain a license before procuring real property purchasers in return for compensation."

Thus, it appears to me that where a Georgia-licensed broker allows a foreign salesman or associate broker to transact the sale in violation of the statute, its action for the resulting commission cannot be entertained by the courts of this state. Otherwise the purpose of the statute would be frustrated. The law will not enforce a contract which is illegal or against public policy. OCGA §§ 13-8-1; 13-8-2; *Georgia Central Credit Union v. Weems*, 157 Ga. App. 439, 440 (1) (278 SE2d 88) (1981).

Nor, as I would construe Ga. Code § 84-1404 (a), can a Georgia-licensed broker claim a commission earned by one of its employees in violation of the statute, thus skirting the law in order to accomplish indirectly what is expressly prohibited directly. The commission is the object of the agreement at issue here and it is illegal since it was not earned without violating the statute. *Shannondoah, Inc. v. Smith*, 140 Ga. App. 200, 202 (230 SE2d 351) (1976). Even plaintiff concedes that Grattan could not bring the suit directly, "for the collection of compensation for the performance of" the acts he accomplished. *Wanamaker v. Esther Wynne Realty*, 163 Ga. App. 338 (294 SE2d 581) (1982).

This result seems mandated by the application of the cardinal rule in the construction of statutes, which is to ascertain the true intention of the legislature in the passage of the law. *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). Interpreting the Code section as plaintiff urges, giving narrow and facial meaning of the words in Section 84-1404 (a) without considering their context or purpose, ig-

nores this rule. It is our duty to ascertain the legislature's intent " 'as derived from the old law, the evil, and the remedy, and . . . not defeat the intention and purpose of the General Assembly by giving effect to words which would render the purpose of the General Assembly in the passage of the enactment futile, unenforceable, or ineffectual.' " *Board of Trustees of Policemen's Pension Fund v. Christy*, 246 Ga. 553, 554 (1) (272 SE2d 288) (1980).

The substantively similar predecessor law concerning the efforts of the broker or salesman to recover, Code 1933 § 84-1413, was construed by this court in 1949: "The principal purpose of the legislature was to prohibit the use of the courts for the purpose of enforcing an illegal contract, . . ." *Drake v. Parkman*, 79 Ga. App. 679, 682 (2) (54 SE2d 714) (1949).

In addition, in construction here, the courts may consider subsequent acts of the legislature on the same subject and are to be guided by the last expression of the General Assembly on the subject. *Board of Trustees*, supra at 555. Current OCGA § 43-40-24 (b) provides: "No broker shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in this chapter without alleging and proving that any [person] acting in the broker's behalf was duly licensed at the time the alleged cause of action arose."

DECIDED JUNE 24, 1986 —
REHEARING DENIED JULY 24, 1986 —

*Steven N. Margolin, Robert D. Wildstein,* for appellant.
*Lewis M. Groover, Jr.,* for appellee.