A00A1672. PATTON v. ST. FRANCIS HOSPITAL et al.
(539 SE2d 526)

JOHNSON, Chief Judge.

This case concerns the applicability of the statutory discovery cloak afforded under the peer review and medical review statutes.[1] Dr. Robert Patton contends the trial court erred in denying his motion to compel discovery directed to St. Francis Hospital because (1) a malice exception applies to the discovery privileges, (2) the medical review and peer review statutes do not apply where the process itself is under attack, and (3) the medical review committee failed to strictly adhere to its bylaws. We find no merit in Patton's arguments and affirm the trial court's order denying Patton's motion to compel discovery.

Patton is a board-certified cardiologist, a sole practitioner, and was a member of the medical staff of St. Francis Hospital from 1975 to 1995. On December 19, 1995, the board of trustees of the hospital formally terminated Patton's clinical privileges. Termination was made at the recommendation of the Medical Staff Executive Committee ("MSEC"), which is responsible under medical staff bylaws for conducting peer reviews of its staff. The recommendation by the MSEC was preceded by a yearlong peer review process. The review was initially requested, following the death of one of Patton's patients, by Dr. Fred M. Burdette, who is a board-certified cardiothoracic surgeon and was a member of the MSEC when he made the request. The peer review proceeding represented the fourth time the hospital had disciplined Patton because of patient care concerns.

During the peer review process, several different committees

---

convened, each of which gathered and reviewed information concerning the care and treatment given by Patton to the deceased patient. The stated purpose of this review was to evaluate and improve the quality of health care rendered at the hospital.

Following a hearing during which Patton was represented by counsel and exercised his right to call, examine, and cross-examine witnesses and to present evidence on his own behalf, the MSEC Ad Hoc Committee issued a report recommending that Patton merely be reprimanded for failing to timely order a specific test on the patient who died. The report stated that the care rendered by Patton was not inappropriate, but also stated that Patton "should have considered and ordered a [specific test] early on in her care." The report questioned whether the test would have changed the outcome. Based on the conflicting language in the committee's report, the MSEC requested reconsideration of the committee's recommendation and added another physician to the committee. The committee then changed its recommendation and instead recommended that Patton's privileges be terminated. Based on the new recommendation, the MSEC voted to recommend termination of Dr. Patton's privileges. An appellate review committee appointed by the hospital board of trustees affirmed the decision of the MSEC, and the board of trustees made the final determination to terminate Patton's privileges.

Patton sued the hospital and Burdette for damages. Patton contends there were numerous bylaw violations during the peer review process. Thus, he sought to utilize the discovery process to obtain peer review information surrounding the termination of his privileges and evidence of any hospital bylaw violations. He requested copies of committee meeting minutes, committee reports, and information about who voted during what meetings, who was present at the meetings, and what was discussed during the various peer review meetings. The hospital objected to the discovery requests on the grounds that such information was not discoverable pursuant to the peer review statutes and the medical review statutes, OCGA §§ 31-7-130 et seq. and 31-7-140 et seq. Patton filed a motion to compel discovery, which was denied by the trial court. He then filed a motion for interlocutory review with this Court, which we granted.

1. Patton first contends that the trial court erred in denying his motion to compel discovery because the discovery protections were eviscerated by a showing that the hospital's proceedings against him were motivated by malice. We agree with the trial court that no malice exception exists to the discovery privilege provided by the peer review and medical review statutes.

The peer review statute provides that: "[e]xcept in proceedings alleging violation of this article, the proceedings and records of a review organization shall be held in confidence and shall not be

subject to discovery or introduction into evidence in any civil action. . . ."[2] Similarly,

> proceedings and records of medical review committees shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee. . . .[3]

These statutes express the legislature's intent to foster the delivery of quality medical services by protecting the confidentiality of peer review records and preserving the candor necessary for the effective functioning of hospital medical review committees.[4] Further, the Supreme Court has held that both peer review and medical review proceedings are *absolutely privileged.*[5]

Although there is evidence that Patton may not have been treated fairly and impartially, the case law is clear that the peer review and medical review proceedings are privileged.[6] Patton argues that the Supreme Court created a malice exception when more than a bare allegation of malice is pleaded.[7] However, Patton misconstrues the majority position in *Freeman.* In *Freeman,* the Supreme Court stated as follows: "The use of a bare allegation of malice is not sufficient to elevate a plaintiff's access to evidence over this court's previously-stated preference for preserving the candor necessary for effective peer review. [Cit.]"[8]

Contrary to Patton's argument, the majority opinion in *Freeman* does not support the creation of a malice exception. The majority noted that to allow an allegation of malice to destroy the discovery shield would result in full discovery in virtually all of the peer review cases, thus swallowing the rule.[9] The majority further noted that a malice exception is found only in a neighboring immunity from liability statute.[10] Since neither the peer review nor medical review statutes pertaining to the discovery privilege mention malice, it is doubtful that the legislature intended to expand the malice exception to the Code sections affording a discovery privilege to peer review proceedings. This Court finds no authority to support the creation of a

---

[2] OCGA § 31-7-133 (a).
[3] OCGA § 31-7-143.
[4] *Eubanks v. Ferrier,* 245 Ga. 763, 766 (4) (267 SE2d 230) (1980).
[5] *Emory Clinic v. Houston,* 258 Ga. 434-435 (1) (369 SE2d 913) (1988).
[6] See id.; *Eubanks,* supra. See also *Freeman v. Piedmont Hosp.,* 264 Ga. 343 (444 SE2d 796) (1994); *Baldwin County Hosp. Auth. v. Wright,* 202 Ga. App. 9 (413 SE2d 484) (1991).
[7] See *Freeman,* supra.
[8] Id. at 345.
[9] Id.
[10] OCGA § 31-7-132 (a).

malice exception to the discovery privileges set forth in OCGA §§ 31-7-133 and 31-7-143.

2. Patton next argues that a bylaw exception exists to the absolute discovery cloak. According to Patton, the alleged failure of a medical review committee to strictly adhere to bylaws strips it of the protection of confidentiality otherwise afforded it in OCGA § 31-7-143. He bases this argument on OCGA § 31-7-140, which defines a medical review committee as a committee of a medical staff or peer review committee, "provided the medical staff operates pursuant to written bylaws. . . ." We find Patton's assertion unpersuasive.

First of all, OCGA § 31-7-140 requires only that the "medical staff" operate pursuant to written bylaws. The statute does not say that the "medical review committee" must operate pursuant to written bylaws or that the review committee must act at all times in perfect compliance with the bylaws in order to be a "medical review committee."

In addition, even assuming that each of the committees here does statutorily qualify as a medical review committee, the only two recognized exceptions to the discovery cloak are named in the second sentence of OCGA § 31-7-143. These include the "original sources" exception and the "matters within [one's] knowledge" exception. Allegations of bylaw violations do not fall within the ambit of either noted exception. This Court finds from a fair reading of the medical review statute that there is no legislative intent to create a "bylaw exception." Likewise, no cases have been cited in support of this position.

From a practical standpoint, to allow a "bylaw exception" would virtually destroy the candor sought in the setting of hospital peer review. Ministerial compliance with bylaws is beyond the control of the vast majority of medical review participants. For instance, witnesses testifying such as nurses and physicians have no control over bylaw compliance. To hold that bylaw infractions committed by hospital attorneys or other administrative staff constitute a sufficient basis for destroying the discovery privilege would have an enormous detrimental impact on physician candor.

Moreover, Patton's argument fails for a more obvious reason. This Court finds that each of the named committees here qualifies under the broader peer review statute found at OCGA § 31-7-131 (1). Hence, the discovery cloak enjoyed by these groups pursuant to OCGA § 31-7-133 (a) applies equally to the committees in this case as well. And, as such, there is no condition precedent attached requiring them to operate according to written bylaws in order to enjoy equal discovery protections. The trial court did not abuse its discretion by upholding the clearly expressed discovery privilege provided by OCGA § 31-7-133.

3. Patton asserts that neither the medical review nor peer review statutes apply in this case because the peer review process itself is being challenged. He argues that the introductory phrase "[e]xcept in proceedings alleging violation of this article" in OCGA § 31-7-133 (a) governing peer review means that suits challenging the peer review process itself are exempt from the privilege. He also argues that a case challenging the peer review process is not one "arising out of the matters which are the subject of evaluation and review by such committee," within the meaning of OCGA § 31-7-143 governing medical review committees. We disagree.

The statutes do not create and the appellate courts have not recognized any such exception. The discovery embargo applicable to peer review groups applies in "any civil action."[11] Similarly, the embargo covering medical review committees applies to "any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee."[12] This case certainly is a "civil action" and was filed against a physician and a hospital, who certainly qualify as "providers of professional health services." The subject of the evaluations and reviews was Patton's treatment of a patient and his disciplinary history.

To allow the exception urged by Patton would undermine the confidentiality afforded medical review committees and would swallow the rule. It is a rare case in which disciplined physicians do not challenge the peer review process. Moreover, both the Supreme Court of Georgia and this Court have confirmed that the absolute embargo applies to civil actions brought by a disciplined physician challenging the peer review process.[13] The trial court did not abuse its discretion in denying Patton's motion to compel discovery.

4. Patton contends that denying him access to the peer review material deprives him of his constitutional right of access to the courts. This issue has been addressed and rejected by the Supreme Court of Georgia.[14] The applicable statutes do not deprive Patton of his right to access to the courts; they merely withhold from him a certain type of evidence which would otherwise be available to him.[15]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

---

[11] OCGA § 31-7-133 (a).
[12] OCGA § 31-7-143.
[13] See *Freeman*, supra; *Baldwin*, supra.
[14] *Eubanks*, supra at 766 (4).
[15] Id.

DECIDED SEPTEMBER 14, 2000 — 

Chilivis, Cochran, Larkins & Bever, Anthony L. Cochran, James D. Durham, for appellant.

Hawkins & Parnell, Alan F. Herman, Love & Willingham, Kimberly L. Woodland, for appellees.