A08A1199, A08A1200. HOSPITAL AUTHORITY OF VALDOSTA AND LOWNDES COUNTY v. MEEKS et al.; and vice versa.
(669 SE2d 667)

ANDREWS, Judge.

Thurman Meeks's wife Jeannette died after a cardiac catheterization and stent placement procedure performed by Dr. Terry Tri at South Georgia Medical Center (SGMC). Meeks sued Tri and SGMC for medical malpractice and for damages arising from SGMC's credentialing and peer review processes. SGMC filed a motion to strike portions of the complaint, claiming that it violated OCGA §§ 31-7-133 and 31-7-143, relating to confidentiality of medical and hospital peer review information and hospital peer review committees' immunity from suit. SGMC also filed a protective order relating to certain interrogatories and requests for production of documents

propounded by Meeks, alleging that the information and documents sought were absolutely privileged and nondiscoverable under the Georgia medical review and peer review statutes cited above.

After a hearing, the trial court ruled that "the contents of SGMC's peer review and medical review files, including SGMC's credentialing files regarding Dr. Tri, are not subject to discovery. This ruling is limited to the contents of those files." We granted SGMC's application for interlocutory review of this order. For the following reasons, we reverse.

1. OCGA § 31-7-133 (a) provides in pertinent part that

[e]xcept in proceedings alleging violation of this article, the proceedings and records of a review organization shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action. . . . The confidentiality provisions of this article shall also apply to any proceedings, records, actions, activities, evidence, findings, recommendations, evaluations, opinions, data, or other information shared between review organizations which are performing a peer review function or disclosed to a governmental agency as required by law.

The Code section also gives two exceptions to the above confidentiality provisions. Any

information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such organization, nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within such person's knowledge; but such witness cannot be asked about such witness's testimony before such organization or about opinions formed by such witness as a result of the organization hearings.

OCGA § 31-7-133 (a).

Similarly, OCGA § 31-7-143 provides that

proceedings and records of medical review committees shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee. . . .

Thus, "the General Assembly has placed an absolute embargo upon the discovery and use of all proceedings, records, findings and recommendations of peer review groups and medical review committees in civil litigation." *Emory Clinic v. Houston*, 258 Ga. 434, 434-435 (369 SE2d 913) (1988).

Here, the trial court has held that only the information and documents *actually contained* in medical and peer review files was privileged, and has ordered SGMC to produce all other information and documentation not actually contained in those files.

The medical review and peer review statutes protect all proceedings and information of a review organization, not just what is included in physical files. With certain exceptions, as stated above, the protections are absolute. See *Patton v. St. Francis Hosp.*, 246 Ga. App. 4, 6 (539 SE2d 526) (2000) ("the Supreme Court has held that both peer review and medical review proceedings are *absolutely privileged*") (footnote omitted). Accordingly, to the extent that the trial court has written in additional exceptions not allowed by either the statute or the case law, that order is reversed.

2. SGMC also argues that the trial court erred in not granting its motion to strike certain paragraphs in the complaint. As SGMC points outs, the trial court neither granted nor denied its motion to strike. Accordingly, this issue is not properly before us. See, e.g., *Reece v. Chestatee State Bank*, 260 Ga. App. 136, 140 (579 SE2d 11) (2003) (where appellant fails to obtain a ruling in the trial court, this Court cannot consider the issue on appeal); *Lee v. State*, 255 Ga. App. 576, 577 (565 SE2d 902) (2002) (because appellant failed to obtain a ruling, her sole enumeration that the court erred in failing to exclude the testimony presents nothing for us to review).

3. In Case No. A08A1200, Meeks cross-appeals, claiming the trial court erred in determining that nothing in SGMC's credentialing files is subject to discovery. We agree that the order is overbroad.

OCGA § 31-7-15 (a) (3) provides that a hospital shall provide for "[t]he evaluation of medical and health care services or the qualifications and professional competence of persons performing or seeking to perform such services." The evaluations

> may be performed by a "peer review committee," defined as a committee of physicians appointed by a state or local or specialty medical society or appointed by the governing board or medical staff of a licensed hospital or ambulatory surgical center or any other organization formed pursuant to state or federal law and engaged by the hospital or ambulatory surgical center for the purpose of performing such functions required by subsection (a) of this Code section.

OCGA § 31-7-15 (b).

In *McCall v. Henry Med. Center*, 250 Ga. App. 679, 682 (551 SE2d 739) (2001), this Court held that

> the definition of "peer review" contained in OCGA § 31-7-131 (1) addresses the evaluation of the quality and efficiency of actual medical care services and does not encompass the credentialing process to the extent that every decision to extend or maintain staff privileges is a peer review function. OCGA § 31-7-15 requires that a hospital establish professional practice review; it does not expand the civil immunity otherwise afforded to peer review groups who may perform the review. . . . Civil immunity will not extend to a peer review committee which is not performing a peer review function.

(Footnote omitted.) Id. *McCall* goes on to state, however, that it "do[es] not hold that no aspect of the credentialing process is a peer review function, especially if the process involves the evaluation of a physician's performance of an actual medical procedure. . . ." Id.

Accordingly, to the extent that the credentialing process involves a peer review committee's evaluation of Tri's performance of medical procedures, the information is not discoverable. However, to the extent that there is information in Tri's credentialing files that does not involve evaluations of his performance of these procedures, that information is discoverable and the trial court erred in holding otherwise.

*Judgments reversed. Bernes, J., concurs. Ruffin, P. J., concurs in part and concurs in the judgment only.*

RUFFIN, Presiding Judge, concurring in part and concurring in judgment only in part.

I concur fully in Divisions 1 and 2, but I cannot agree with the majority's analysis in Division 3 and so concur in the judgment only in Case No. A08A1200.

I agree with the majority that the trial court's order is overbroad to the extent that it provides that nothing in SGMC's "credentialing files" is discoverable. The trial court is unable to make such a sweeping determination at this point. I am concerned, however, that the majority has misconstrued the applicable law in reaching its finding that "to the extent that there is information in Tri's credentialing files that does not involve evaluations of his performance of [medical] procedures, that information is discoverable." (p. 632)

In *Hollowell v. Jove*,[1] our Supreme Court concluded that the protection from discovery provided by OCGA § 31-7-143 includes

> information *generated in the course of medical review committee proceedings* which relates to the physician's general competence, his competence to treat the condition from which the decedent suffered as evidenced by his treatment of other similarly afflicted patients and his competence to perform medical procedures other than those specifically involved in the subject litigation.[2]

The protection from discovery of proceedings and records of peer review organizations afforded by OCGA § 31-7-133 (a) is similarly broad.[3] There is nothing in either OCGA § 31-7-133 or § 31-7-143, the statutes directly at issue, which limits protection from discovery to information involving the evaluation of a medical procedure. Rather, "what is not discoverable is . . . records generated solely to provide peer review or information [gained] exclusively through or by the committee for investigation by peer review, that is, discovery relative to medical or peer review."[4] Thus if SGMC's "credentialing files" include information related to Dr. Tri's general competence, and the information was generated exclusively through a medical review or peer review proceeding, it would be privileged and not subject to discovery.

*McCall v. Henry Med. Center*[5] is not applicable here. At issue in Division 1 of *McCall*, from which the majority quotes at length, was the scope of *civil immunity* afforded to peer review organizations,[6] and any analysis contained in that opinion limiting the definition of peer review to the review of medical procedures cannot be fairly

---

[1] 247 Ga. 678 (279 SE2d 430) (1981).

[2] (Emphasis in original.) Id. at 682 (b).

[3] OCGA § 31-7-133 (a) provides, as to peer review organizations, that "the proceedings and records of a review organization shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action." A "review organization" is defined to include any panel, committee, or organization which, in addition to certain requirements as to its composition, "engages in or utilizes peer reviews and gathers and reviews information relating to the care and treatment of patients for the purposes of: . . . [p]erforming any of the functions or activities described in Code Section 31-7-15." OCGA § 31-7-131 (3) (B) (vi). In turn, OCGA § 31-7-15 provides that review of professional practices required thereby shall include "the qualifications and professional competence of persons performing or seeking to perform such services." OCGA § 31-7-15 (a) (3).

[4] (Citations omitted.) *Cobb County Kennestone Hosp. Auth. v. Martin*, 208 Ga. App. 326, 327-328 (430 SE2d 604) (1993).

[5] 250 Ga. App. 679 (551 SE2d 739) (2001).

[6] See id. at 679-682 (1).

extended to this discovery dispute.[7] Even in Division 2 of *McCall*, which did involve a discovery issue, we did not attempt to apply the analysis contained in Division 1 to whether information was protected from discovery under OCGA § 31-7-133 (a).[8]

Accordingly, in Case No. A08A1200, I would reverse the trial court's order as overbroad and premature to the extent it provides that nothing in SGMC's credentialing files is discoverable, but limit direction to the trial court to consider the admissibility of the credentialing files and the information contained therein in accordance with the principles set forth by the majority in Division 1 of the opinion.

DECIDED OCTOBER 27, 2008 —
RECONSIDERATION DENIED NOVEMBER 18, 2008 — 

*Reinhardt, Whitley, Wilmot, Summerlin & Pittman, Glenn Whitley, Karen H. Summerlin, Coleman, Talley, Newbern & Kurrie, Wade H. Coleman, Jr., Hall, Booth, Smith & Slover, Thomas M. Burke, Jr., Anthony A. Rowell, Walter H. New*, for appellant.

*Adams, Jordan & Treadwell, Marc T. Treadwell, O. Wayne Ellerbee*, for appellees.

---

[7] It is not clear that, even in the context of civil immunity, we intended in *McCall* to strictly define peer review functions to the review of medical procedures:

> We do not hold that no aspect of the credentialing process is a peer review function, *especially* if the process involves the evaluation of a physician's performance of an actual medical procedure, but summary judgment is not warranted merely because a peer review committee has approved Dr. Parker, and this appears to be the basis for the trial court's grant of summary judgment.

(Emphasis supplied.) Id. at 682 (1).

