S09G0466. HOSPITAL AUTHORITY OF VALDOSTA AND LOWNDES COUNTY v. MEEKS et al.

(678 SE2d 71)

CARLEY, Justice.

Thurman Meeks, both individually and as executor of his deceased wife's estate, brought suit against the Hospital Authority of Valdosta and Lowndes County, d/b/a South Georgia Medical Center (Hospital) and against Dr. Terry Tri for damages. This action is based in part upon the alleged negligence of the Hospital in credentialing Dr. Tri to perform the cardiac procedure that resulted in the death of Meeks' wife. The Hospital filed a motion for protective order, asserting that certain of Meeks' discovery requests sought information and documents which were absolutely privileged under Georgia's medical review and peer review statutes. See OCGA §§ 31-7-133 (a), 31-7-143. The trial court ruled that "the contents of [the Hospital's] peer review and medical review files, including [its] credentialing files regarding Dr. Tri, are not subject to discovery. This ruling is limited to the contents of those files."

On interlocutory appeal by the Hospital, the Court of Appeals reversed, holding that "[t]he medical review and peer review statutes protect all proceedings and information of a review organization, not just what is included in physical files." *Hospital Auth. of Valdosta and Lowndes County v. Meeks*, 294 Ga. App. 629, 631 (1) (669 SE2d 667) (2008). However, the Court of Appeals also reversed on Meeks' cross-appeal, determining that, "to the extent that there

---

[13] *Warner v. State*, 281 Ga. 763, 765 (642 SE2d 821) (2007); *Bryant v. State*, 274 Ga. 798, 801 (560 SE2d 23) (2002).

is information in Tri's credentialing files that does not involve [a peer review committee's] evaluations of his performance of [medical] procedures, that information is discoverable . . . ." *Hospital Auth. of Valdosta and Lowndes County v. Meeks*, supra at 632 (3). In a separate opinion, Presiding Judge Ruffin concurred in judgment only as to Division 3, stating that, if the Hospital's " 'credentialing files' include information related to Dr. Tri's general competence, and the information was generated exclusively through a medical review or peer review proceeding, it would be privileged and not subject to discovery." *Hospital Auth. of Valdosta and Lowndes County v. Meeks*, supra at 633. Having granted certiorari to consider the important issue addressed in the physical precedent of Division 3, we conclude that information in Dr. Tri's credentialing files is discoverable to the extent that it does not involve a peer review or medical review committee's evaluation of actual medical services provided by him.

In OCGA §§ 31-7-133 (a) and 31-7-143, with certain exceptions for information otherwise available from original sources and for testimony which is independent from the witness' appearance at committee hearings, "the General Assembly has placed an absolute embargo upon the discovery and use of all proceedings, records, findings and recommendations of peer review groups and medical review committees in civil litigation . . . ." *Emory Clinic v. Houston*, 258 Ga. 434-435 (1) (369 SE2d 913) (1988). See also *Freeman v. Piedmont Hosp.*, 264 Ga. 343, 344-345 (444 SE2d 796) (1994). Of course, these statutes must be construed in accordance with the legislative intent, but they cannot be expansively construed, for they are "in derogation of the general policy in favor of the discovery and admissibility of probative evidence. [Cits.]" *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981).

> Part of the definition of a "medical review committee" is that it is formed to evaluate and improve the quality of health care rendered by providers of health service or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area.

OCGA § 31-7-140. " 'Peer review' means the procedure by which professional health care providers evaluate the quality and efficiency of services ordered or performed by other professional health care providers . . . ." OCGA § 31-7-131 (1). A "review organization" "engages in or utilizes peer reviews and gathers and reviews infor-

mation relating to the care and treatment of patients for" certain specified purposes. OCGA § 31-7-131 (3) (B). Like Judge Andrews in his opinion for the Court of Appeals, we hold that a careful reading of these definitions reveals that they address " 'the evaluation of the quality and efficiency of actual medical care services and [do] not encompass the credentialing process to the extent that every decision to extend or maintain staff privileges is a peer review' " or medical review function. *Hospital Auth. of Valdosta and Lowndes County v. Meeks*, supra at 632 (3) (quoting *McCall v. Henry Medical Center*, 250 Ga. App. 679, 682 (1) (551 SE2d 739) (2001)). See also *State v. Enright*, 706 SW2d 852, 855 (V) (Mo. 1986) (En Banc) (not all functions of credentials committees are exempt from discovery under a statute which exempts findings and deliberations "concerning the health care provided any patient").

Thus, the "proceedings and records" to which the privileges in OCGA §§ 31-7-133 (a) and 31-7-143 attach include records of a medical review or peer review "committee relating to care of patients other than the plaintiff or the decedent whose estate or interests are represented by the plaintiff. Such a broad range exclusion . . . is clearly authorized by the statutory language" and promotes the underlying purpose of the privileges " 'by preserving the candor necessary for the effective functioning of' " such committees. *Hollowell v. Jove*, supra at 680, 682 (a). "It is apparent that a candid evaluation of a physician's performance will likely necessitate a discussion of services rendered to patients other than the plaintiff or his decedent." *Hollowell v. Jove*, supra at 682 (a). Immediately after this holding in *Hollowell*, this Court drew a further conclusion:

> It follows from what has just been said that [OCGA § 31-7-143] applies to information generated in the course of medical review committee proceedings which relates to the physician's general competence, his competence to treat the condition from which the decedent suffered as evidenced by his treatment of other similarly afflicted patients and his competence to perform medical procedures other than those specifically involved in the subject litigation. (Emphasis omitted.)

*Hollowell v. Jove*, supra at 682 (b). The reference to "the physician's general competence" is explained by this Court's immediately preceding holding, as well as the ensuing language. The phrase distinguishes competence in the medical treatment of the plaintiff or the decedent from that competence which includes medical treatment that was of a different type or was provided to a different patient. This latter competence is properly described as "general" when

compared to a physician's competence in treating a single patient. In context, therefore, the phrase "general competence" in *Hollowell* is simply not used to refer in any way to routine credentialing information, such as a physician's education, training, or experience, which is not part of an evaluation of actual medical diagnoses, treatments, and procedures that he has provided to specific patients.

The Hospital relies upon OCGA § 31-7-15, which provides that a hospital's review of professional practices may be performed by a peer review committee and includes "[t]he evaluation of medical and health care services or the qualifications and professional competence of persons performing or seeking to perform such services." OCGA § 31-7-15 (a) (3). The fact that this language may be broad enough to encompass the credentialing process does not mean that that process constitutes a peer review function as set forth in OCGA § 31-7-131. See *Fulton-DeKalb Hosp. Auth. v. Dawson*, 270 Ga. 376, 379 (2) (509 SE2d 28) (1998). Consistent with Judge Andrews' analysis, we rule that OCGA § 31-7-15 does not expand the privilege set forth in OCGA § 31-7-133 (a) to those proceedings and records of a peer review committee which involve only the credentialing process and not a peer review function. See *Hospital Auth. of Valdosta and Lowndes County v. Meeks*, supra; *McCall v. Henry Medical Center*, supra (the same analysis is equally applicable in holding that OCGA § 31-7-15 does not expand the civil immunity otherwise afforded to peer review groups under OCGA § 31-7-132 (a) so as to include all aspects of the credentialing process). The Hospital further relies upon OCGA § 31-7-131 (3) (B) (vi), which provides that one of the permitted purposes of peer review and the gathering and review of information relating to the care and treatment of patients may be performance of the review described in OCGA § 31-7-15. However, nothing in OCGA § 31-7-131 (3) (B) (vi) implies that, conversely, every part of the review in OCGA § 31-7-15 constitutes peer review.

Accordingly, application of the privileges in OCGA §§ 31-7-133 (a) and 31-7-143 to routine credentialing information is not authorized by any statutory language, nor is it necessary to promote the underlying purpose of those code sections. Compare *Hollowell v. Jove*, supra at 682 (a). It is not "apparent that a candid evaluation of a physician's performance will likely necessitate a discussion of" such credentialing information. Thus, use of the peer review process to protect routine credentialing information would needlessly run the risk of barring a plaintiff's tort action for negligent credentialing. See *McCall v. Henry Medical Center*, supra; *Emory Univ. Hosp. v. Sweeney*, 220 Ga. App. 502, 506 (469 SE2d 772) (1996). Unless the credentialing information involves the evaluation of the quality and efficiency of actual medical services, it does not come within the peer

review and medical review privileges of OCGA §§ 31-7-133 (a) and 31-7-143. See *McCall v. Henry Medical Center*, supra.

*Judgment affirmed. All the Justices concur, except Hines and Melton, JJ., who dissent.*

MELTON, Justice, dissenting.

The simple, straightforward terms of both our statutes and this Court's case law require an absolute embargo on the proceedings and records of peer review committees performing credentialing reviews. Accordingly, I must respectfully dissent from the majority opinion.

OCGA §§ 31-7-133 (a) and 31-7-143, and the opinions of this Court make it clear that "the General Assembly has placed an *absolute* embargo upon the discovery and use of *all* proceedings, records, findings and recommendations of peer review groups and medical review committees in civil litigation." (Emphasis supplied.) *Emory Clinic v. Houston*, 258 Ga. 434, 434-435 (369 SE2d 913) (1988). See also *Freeman v. Piedmont Hosp.*, 264 Ga. 343 (444 SE2d 796) (1994). It is also explicit in our statutory law that the credentialing process may be performed by a peer review committee as a legitimate peer review function. OCGA § 31-7-15. Reading these two unambiguous directives together, it becomes equally clear that there must be "an *absolute* embargo upon the discovery of *all* proceedings, records, findings and recommendations [relating to credentialing of doctors performed by] peer review groups and medical review committees in civil litigation." *Emory Clinic v. Houston,* 258 Ga. at 434-435.

In relevant part, OCGA § 31-7-133 (a) provides:

> Except in proceedings alleging violation of this article, the proceedings and records *of a review organization* shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action. . . . The confidentiality provisions of this article shall also apply to any proceedings, records, actions, activities, evidence, findings, recommendations, evaluations, opinions, data, or other information shared between review organizations *which are performing a peer review function* or disclosed to a governmental agency as required by law.

(Emphasis supplied.) In addition, OCGA § 31-7-143 further mandates: "The proceedings and records of medical review committees shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee. . . ." The clear import of these two statutory provi-

sions is that any proceedings or records produced by a medical or peer review committee while considering matters properly subject to their review are not discoverable.[1]

One such matter properly subject to the consideration of a peer review committee is the credentialing of doctors. OCGA § 31-7-15 makes this explicit. It first states that a

> hospital or ambulatory surgical center shall provide for the review of professional practices in the hospital or ambulatory surgical center for the purpose of reducing morbidity and mortality and for the improvement of the care of patients in the hospital or ambulatory surgical center.

OCGA § 31-7-15 (a). The statute then provides that the

> functions required by subsection (a) of this Code section may be performed by a "peer review committee," defined as a committee of physicians appointed by a state or local or specialty medical society or appointed by the governing board or medical staff of a licensed hospital or ambulatory surgical center or any other organization formed pursuant to state or federal law and engaged by the hospital or ambulatory surgical center for the purpose of performing such functions required by subsection (a) of this Code section.

OCGA § 31-7-15 (b). Therefore, it is evident from this statute that one of the functions of a peer review committee recognized by the Legislature is the credentialing of doctors. Given the broad discovery rules set forth in OCGA § 31-7-133, it follows that any proceedings, records, actions, activities, evidence, findings, recommendations, evaluations, opinions, data, or other information shared during a peer review meeting for the purpose of credentialing may not be discovered in civil litigation.

Rather than applying these statutes in the simple and unambiguous manner in which they are written, the majority employs many unnecessary levels of construction and misconstruction to diminish and limit the *absolute* embargo both the statutes and our prior cases mandate.[2] If the Legislature had intended for the discov-

---

[1] Statutory exceptions to this rule are made only for information otherwise available from original sources or testimony unrelated to a committee hearing. OCGA § 31-7-133 (b).

[2] Both the Court of Appeals and the majority rely heavily on *McCall v. Henry Medical Center*, 250 Ga. App. 679 (551 SE2d 739) (2001). That case, however, dealt largely with the civil liability of the members of a peer review committee. It did not reach the issue of the extent of

ery embargo not to be absolute, it could have said so. It did not, and it is inappropriate for the majority to now impose judicial limitations on statutory laws which have none.

For all of the reasons set forth above, I would reverse in this case. I am authorized to state that Justice Hines joins in this dissent.

DECIDED JUNE 8, 2009.

*Reinhardt, Whitley, Summerlin & Pittman, Glenn Whitley, Karen H. Summerlin, Walter H. New, Alston & Bird, Donna P. Bergeson, Angela T. Burnette*, for appellants.

*O. Wayne Ellerbee, Adams, Jordan & Treadwell, Marc T. Treadwell, Caroline W. Herrington, Hall, Booth, Smith & Slover, Thomas M. Burke, Jr., Anthony A. Rowell, Coleman Talley, Wade H. Coleman*, for appellees.

the discoverable nature of the proceedings and records of a peer review committee beyond those items made explicitly discoverable under OCGA § 31-7-133 (b).